THE PEOPLE *ex rel.* S. H. McCrea, Collector, etc.

*v.*

THE UNITED STATES OF AMERICA.

1. STATE TAXATION—*Federal exemption.* The power of taxation by a State, however broad and comprehensive it is, is not so extensive as to embrace property regarded as the means or instruments of conducting the Federal government in pursuance of the constitution, nor to subjects over which the sovereign power of the State does not extend. Such property is exempt from State taxation.

2. The power of a State to tax, ample as it is, does not reach the means and instruments of the Federal government, nor to the administration of justice in the Federal courts, nor the collection of the public revenue, nor so as to interfere with any constitutional regulation of Congress.

3. SAME—*property of the United States exempt.* Property, while the title to it is in the United States, no matter for what purpose it is acquired or held, is exempt from State taxation.

4. SAME—*who may object to judgment.* When taxes are levied upon property while owned by the United States, and are sought to be collected by judgment and sale after a lease of the property to a private citizen, it is not a matter of any consequence who files objections to the taxes, whether it is done by the lessee or by the United States through its proper officer, and the District Attorney of the United States resident in the district where the property is situate is a proper person to interpose objections on behalf of the United States.

APPEAL from the County Court of Cook county; the Hon. MASON B. LOOMIS, Judge, presiding.

Mr. FRANCIS ADAMS, for the appellants:

1. Property seized by the United States for non-payment of taxes, and sold and conveyed to the United States, under the act of Congress, is not exempt from State taxation.

The power of a State to tax extends to all objects and property within its jurisdiction, except when the exercise of the power is prohibited by the Federal constitution, and also except the means and instruments of the Federal government. *Nathan* v. *Louisiana,* 8 How. 82; *McCulloch* v. *State of Maryland,* 4 Wheat. 429.

In the case last cited it was held that the real property of the bank of the United States, in the State of Maryland, might be taxed "in common with other property of the same description throughout the State." Burroughs on Taxation, p. 120, § 69.

Although a vessel can not be taxed as an instrument of commerce, as for instance in reference to its capacity, yet it may be taxed in the home port as other property is taxed. Cooley Con. Limit. 606; Cooley on Taxation, 60; Burroughs on Taxation, 91.

The reason of the rule that instrumentalities used by the Federal government for the exercise of the powers granted by the Federal constitution are exempt from State taxation is, that the power to tax necessarily includes the power to destroy, and that by destroying, under the guise of taxation, the means necessary to the execution of the granted powers, a State might prevent the exercise of such powers within its territorial limits, and so practically nullify the grant. *Mc-Culloch* v. *State of Maryland,* 4 Wheat. 427, *et seq.*; Cooley on Taxation, p. 57.

The property in question is not such an instrumentality. It is not held or used as a means for the execution of any power of the general government, and the taxing of it can not impede or obstruct in any manner the exercise of any power of the general government.

By the act of Congress, land seized for taxes and exposed to public sale, and struck off to the United States for want of bidders, as it is claimed this was, is merely held by the government as security for the payment of the taxes.

The act of Congress does not contemplate that the government shall perpetually hold the title to such lands.

The owner of any such lands may redeem them at any time within two years from the date of the conveyance to the government, by paying the taxes, and one per centum per month; and, if not redeemed within two years, the Commissioner of Internal Revenue, with the approval of the Secretary of the

Treasury, may sell them at public auction, on twenty days' notice. Rev. Stat. U. S. 1878, § 3208.

2.   The power to tax the same property may be exercised by both the Federal and State governments, without conflict, inconsistency or repugnancy. *Ward* v. *Maryland*, 12 Wall. 428.

Mr. JOHN P. WILSON, for the appellee:

1. *Are lands, the property of the United States, subject to taxation by authority of the State?*

It was decided in the case of *Phœbe* v. *Jay*, Breese, 268, that the ordinance of 1787, passed by Congress, for the government of the territory of the United States northwest of the river Ohio, is still in force, and binding upon the people of this State. The court in its opinion says: "The ordinance, however, is no doubt binding upon the people of this State, unless it has been abrogated by common consent. By common consent I understand the United States and the people of this State, and whenever they shall agree that the whole or any part of the ordinance of 1787 shall be repealed, it will, so far as it affects this State, become a dead letter."

To the same effect see, *Hogg* v. *Zanesville Canal Co.* 5 Ohio, 410; *Spooner* v. *McConnell*, 1 McLean, 337; *Palmer* v. *Commissioners Cuyahoga Co.* 3 McLean, 226; *Williams* v. *Beardsley*, 2 Carter (Ind.) 59.

By article 4 of said ordinance of 1787, it is provided, "No tax shall be imposed on lands the property of the United States."

In the case of *McGoon* v. *Scales*, 9 Wall. 27, it was held that the land in controversy in that case was not subject to State taxation while it was owned by the United States.

In the case of *Railway Company* v. *Prescott*, 16 Wall. 603, lands formerly owned by the United States were held not taxable by the State as long as the United States had any interest in them. In neither of the last two cases was the land in question held or used as a means for the execution of any

power of the general government. It is not apparent that the source from which the government acquires title is material. In the case at bar the title was acquired in the execution of the revenue laws of the United States. The time of redemption had expired, and a deed had been executed by the proper officer to the United States. It is not contended that any person had any interest, legal or beneficial, in this subsequent to 1872, and prior to 1879.

Some of the reasons why the property of the general government should not be subject to State taxation have been well stated by this court in *Fagan* v. *City of Chicago,* 84 Ill. 233.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

Application was made by the county collector to the county court of Cook county, at the July term, 1879, for judgment for taxes on delinquent lands and lots, due thereon for the year 1878 and other previous years, and among others for judgment against the lots described in the objections filed in the name of the United States by the District Attorney for the Northern District of Illinois, in which the lots are situated. It is sufficiently proven that the United States government acquired the title to the lots in question under the provisions of the revenue law of the United States, during the years 1870 and 1871. It appears a deed was made by the proper officer designated in the statute, conveying the lots to the United States, and that title so acquired, whatever it was, the United States held without question from any one until May, 1879, at which time the government, by its officers, leased the same to Ogden for a period of ninety-nine years.

It was during the years prior to the leasing, and during the time the title to the property appeared to be in the United States, that the taxes for which judgment is sought were levied. It does not appear that during that period any citizen of this or any other State claimed any interest in the property

assessed, but the title on the record seemed to be in the United States.

The defence made is, that lands the property of the United States are not subject to taxation by the State. An argument against such taxation is based on that provision of the ordinance of 1787, adopted for the government of territory of the United States northwest of the Ohio river, of which Illinois was a part, which declares in section four, among the restrictions imposed upon the States to be formed out of such territory, that "no tax shall be imposed on lands the property of the United States."

Conceding the clause of the ordinance of 1787, cited, is still in force, and binding on the State, it would seem to be an absolute inhibition upon the State to impose any tax upon lands the property of the United States, no matter how the title might be acquired, nor for what purpose held. It was ordained that the six articles enumerated shall be considered as articles of compact between the original States and the people and States in such territory, and forever remain unalterable unless by common consent.

In *Phœbe* v. *Jay*, Breese, 268, it was said, the ordinance was, no doubt, binding upon the people of the States unless abrogated by "common consent." By "common consent" was understood to be by action of the United States and the people of the States affected. Congress, having admitted Illinois into the Union with the constitution adopted, gave consent to the abrogation of so much of the ordinance of 1787 as was inconsistent with that instrument, but such provisions as were not in opposition to our constitution were held to be binding on the State. McLEAN, J., on the circuit, expressed substantially the same views, in two cases heard before him: *Spooner* v. *McConnell*, 1 McLean, 337; *Palmer* v. *Commissioners*, 3 id. 226. The Supreme Court of the United States, however, seem to have adopted the view that the ordinance of 1787 is not in force in the States since formed within the territory mentioned and admitted into

the Union on an equal footing with the original States. The question was raised and discussed in *Permoli* v. *First Municipality*, 3 How. 589. The act of Congress of April, 1798, extended the ordinance of 1787 to the then territory of Mississippi with the exception of the anti-slavery clause, and declared the people of the territory should be entitled to and enjoy all the rights and privileges. and advantages granted to the people of the territory northwest of the Ohio river, and by the act of March 2, 1805, it was enacted that the people of the then territory of Orleans should have all the rights, privileges and advantages under the ordinance of 1787 then enjoyed by the people of the Mississippi territory.

Although the decision in *Permoli* v. *First Municipality* was confined to the territory in which it arose, TANEY, C. J., in remarking upon it in *Strader* v. *Graham*, 10 How. 82, said: "When it is decided that this ordinance is not in force in Louisiana, it follows it can not be in force in Ohio." It may be added, as a matter of course, if the ordinance is not in force in Ohio, it can not be in force in Illinois. An elaborate discussion of the effect of the ordinance of 1787, and of the acts of Congress extending it to other territory, was had in *Pollard* v. *Hogan*, 3 How. 212, and Chief Justice TANEY, in *Strader* v. *Graham*, refers to the opinion delivered in that case and expresses his concurrence in the reasoning and principles by which the judgment was maintained.

The question raised is one of grave importance, and without expressing any definite opinion as to whether the clause of the fourth section of the ordinance of 1787, cited, has been changed or annulled by competent authority, or whether it is still binding as an inhibition on the taxing power of the State, we think the present judgment may be maintained on other grounds.

It is said the taxing power of the State is one of its attributes of sovereignty, and where there is no restraining compact with the Federal government, nor no cession of inconsistent jurisdiction in the United States, it extends to all property in

the State and may be exercised upon every object brought
within its jurisdiction.   But broad and comprehensive as this
power of taxation existing in the State is conceded to be, it
has not been considered so extensive as to embrace property
regarded as the instruments or means of conducting the Fed-
eral government in pursuance of the constitution, nor to
subjects over which the sovereign power of the State does not
extend.   Such property has always been conceded to be exempt
from taxation by State governments.   The cases sustaining
these general propositions of law are of conclusive authority
with us.   *Fagan* v. *City of Chicago,* 84 Ill. 233; *Transpor-
tation Company* v. *City of Wheeling,* 9 Otto, 273; *McCulloch* v.
*State of Maryland,* 4 Wheat. 429; *Nathan* v. *Louisiana,* 8 How.
82.   No argument is made against these propositions, now so
generally conceded as to be regarded as almost self-evident.
But the position taken is, that the power of the State to tax ex-
tends to all objects and property within its jurisdiction except
when the exercise of such power is prohibited by the Federal
constitution, and also except the means and instruments em-
ployed by the Federal government in the execution of the
powers conferred in pursuance of the constitution; and as there
is no inhibition in the Federal constitution against taxing such
property as that involved, and as it is not an instrumentality
employed by the government, it is said it is subject to the tax-
ing power of the State notwithstanding the title may be in the
United States.   The principal case cited in support of this
view of the law is *McCulloch* v. *State of Maryland,* but that
case does not sustain the proposition as broadly as it is stated.
That case, remarkable as well for the force of its logic as for
the importance of the questions discussed, holds that a law
passed by the legislature of the State of Maryland imposing a
tax on the Bank of the United States is contrary to the con-
stitution of the United States, and therefore void.   Comment-
ing briefly on the results to flow from the decision announced,
it was said, it does not deprive the States of any resources
which they originally possessed,—that it does not extend to a

tax paid by the real property of the bank in common with
other real property within the State, nor to a tax imposed on
the interest which the citizens of Maryland may hold in the
institution in common with other.property of the same descrip-
tion throughout the State.

The case of *Nathan* v. *Louisiana*, declares the same general
principles.   The decision is that a State law which imposes a
tax on an exchange and money broker is not repugnant to the
constitutional power of Congress to regulate commerce.   It
will be observed the property declared to be subject to State
taxation belonged to citizens of the State imposing the tax,
and in which the United States had no interest whatever.

Although the power to impose taxes resides in the States as
well as in the United States, yet a State can not, without the
consent of Congress, levy tonnage duty on vessels or ships, but
the vessels themselves may be and are regarded as the subject
of State taxation.   That is upon the principle that lies at the
foundation of all the cases on this subject, viz: that the prop-
erty subject to State taxation is property owned, managed and
controlled by private persons or corporations in favor of pri-
vate interests.

Ample as the State power of taxation undoubtedly is, it
does not, as we have seen, reach the means and instruments of
the Federal government, nor to the administration of justice
in the Federal courts, nor the collection of the public revenue,
nor interfere with any constitutional regulation of Congress.
The reason is obvious, and it is that the power to tax involves
the power to destroy.   An unlimited power of taxation exist-
ing in the Federal or State governments would result in con-
sequence of interfering powers, as expressed by Chief Justice
MARSHALL, in *McCulloch* v. *State of Maryland*, in the right
of one government to pull down what there is an acknowledged
right in another to build up, or in the right in one government
to destroy what there is the right in another to preserve.

In the case at bar the title to the property sought to be sub-
jected to State taxation was acquired by the United States

under the general revenue law, and if the State, under the pretence of the taxing power, may destroy that title, there would evidently follow a clashing of sovereign authority, or the destruction by one government what another has the acknowledged right to preserve. This ought to be avoided. No doubt the power to tax the property of the citizen may be exercised at the same time upon the same objects of private property by the State and the United States without inconsistency or repugnancy, but that implies the subject of taxation is private property of the citizen or of a private corporation. The moment the title to the property becomes vested either in the State or the United States, the property is no longer the subject of taxation. It does not seem it makes any difference whether the property is used as a means or instrumentality for the execution of any of the powers of the Federal government under the constitution. It is sufficient if the title is in the United States,—the exemption from taxation attaches. *McGoon* v. *Scales*, 9 Wall. 23; *Railway Co.* v. *Prescott*, 16 id. 603. We have not been referred to a single case that declares property to be the subject of State taxation where the title is in the United States, no matter for what purpose it was held.

The question involved is one of great importance, and although we have not elaborated the discussion to any great length, we have given the case the fullest consideration, and our conclusion is that as the title to the property was in the United States during the years the taxes sought to be collected were respectively assessed, the levies were without authority of law and hence void.

Whether the property in the hands of the lessee, or his interest in it, be it what it may, will hereafter be subject to taxation under our State laws, is a question that can not arise on this record, nor do we think it is a matter of any consequence who files the objection to the taxes,—whether it is done by the lessee or by the United States by the proper officer. If the property were not subject to taxation the State should not be permitted to embarrass the title by a tax sale, and it would

seem the law officer of the United States resident in the district where the property is situated would be a proper person to interpose objections on behalf of the government.

The judgment will be affirmed.

*Judgment affirmed.*