RICHARD S. TYLER, Respondent *v.* CASS COUNTY, Appellant.

1. **Taxation — Lands in Northern Pacific Grant Prima Facie Taxable, Though in Fact Not Taxable.**

The defendant county, through its treasurer, sold certain lands for delinquent taxes at the annual tax-sale in October, 1885. The lands so sold were a part of the original grant by the general government to the Northern Pacific Railroad Company. The lands were surveyed at the expense of the United States, and earned by said company after the passage of the act of congress of July 15, 1870, pertaining to survey fees; and no part of said survey fees had been repaid to the United States at the time of such sale. Prior to the assessment and levy of said taxes, for which said lands were sold, the railroad company had disposed of the lands, and conveyed them to third parties by deeds and contracts, and such third parties were in possession. Said lands were regularly assessed, and all the proceedings leading up to the tax-sale were regular. Plaintiff bought the land at such tax-sale, and brings the action to recovery the purchase money so paid. *Held*, that such lands were not taxable at the time of such assessment, because the United States held the fee title to said lands, and had a lien thereon for survey fees, (Railroad Co. v. Rockne, 115 U. S. 600, 6 Sup. Ct. Rep. 201;) but that, since land was a subject of taxation in Dakota Territory, *prima facie* these lands were taxable. Taxation was the rule; freedom from taxation the exception.

2. **Same—Jurisdiction of Assessor.**

*Held, further*, that the assessor being a judical officer, where property is exempt from taxation by class, and not by specific description, he has full jurisdiction, and it is his duty to decide in each instance whether or not a particular piece of property falls within any of the exempted classes, and in this respect the source of the law that establishes the exemption is immaterial.

**3.   Same; Same—Erroneous Decision of Assessor.**

*Held, further,* that an erroneous decision of an assessor in the matter of exemptions does not deprive the tax proceedings of jurisdiction; but, until such erroneous decision is modified or set aside by the proper tribunal, all officers with subsequent functions may safely act thereon.

**4.   Same—Caveat Emptor—Budge v. Grand Forks Followed.**

Upon a right of recovery at common law, there is nothing in this case to relieve the plaintiff from the rule of *caveat emptor,* as announced by this court in the case of Budge v. City of Grand Forks, 47 N. W. Rep. 390, *(ante* p. 309.)

**5.   Same—Treasurer is a Ministerial Officer, Protected by His Warrant.**

Under the laws in force when such sale was made, the treasurer, in the matter of the collection of the taxes, was purely a ministerial officer; and when he received the duplicate tax-list, with the warrant of the county commissioners attached, if such process was fair on its face, and contained nothing that would apprise the treasurer of any defects or infirmaties, and in a case where it does not appear that the treasurer had any knowledge of any defects or infirmities, such treasurer was fully protected from personal liability in collecting the taxes upon all property contained in said list, so long as he acted strictly within the statute.   The law furnished his authority for selling property for delinquent taxes; the warrant, with the tax-list attached, furnished him the subjects upon with to exercise such authority.

**6.   Same—Treasurer Must Sell all Lands on the List on Which Taxes Remain Unpaid.**

The statute, (Comp. Laws, § 1621,) which required the treasurer to "sell all lands liable for taxes of any description for the preceding year or years," meant all lands liable for taxes, as shown by the process in his hands.   He could not refuse to sell lands on his list, nor could he sell lands not on his list.

**7.   Same; Sale Held Not to Have Been by Mistake or Wrongful Act of Treasurer.**

Section 1629, Comp. Laws, then in force, read as follows: "When by mistake or wrongful act of the treasurer, land has been sold on which no tax was due at the time, the county is to save the purchaser harmles by paying him the amount of the principal, and interest at the rate of 12 per cent. per annum from the date of sale, and the treasurer and his sureties shall be liable for the amount to the county on his bond, or the purchaser may recover the same directly from the treasurer." *Held,* that the sale of the lands in this case was neither the mistake nor the wrongful act of the treasurer, within the meaning of said section, and that plaintiff has no right of action under such section.

**8. Section 84, Chapter 132, Laws 1890, Not Retroactive.**
> Section 84, c. 132, of the laws of North Dakota for 1890 has no application to a sale of lands made before the enactment of said chapter.

(Opinion Filed November 29, 1890; Rehearing Denied.)

*A* PPEAL from district court, Cass county; Hon. WM. B. McConnell, Judge.

S. B. Barlett, A. C. Davis and J. A. McEldowney, for appellant: In absence of a statute the maxim *caveat emptor* applies to the fullest extent to purchaser of tax-title. Cooley on Taxation, (2d Ed.) 546; Devlin on Deeds, vol. 2, §§ 1349-51; Black on Tax Titles, §§ 263, 269; Blackwell on Tax Titles, §§ 53, 66, 67, 442; Desty on Taxation, vol. 2, p. 1011.

To bring the case within the statute, the sale must have occurred by the mistake or wrongful act of the treasurer; but he makes no mistakes and commits no wrong in pursuing the command of his tax warrant. Cooley, 797; Desty, vol. 2, p. 689; Sprague v. Birchard, 1 Wis., 457; Bird v. Perkins, 33 Mich. 28. The statute makes the tax-list, with the warrant attached, full authority to the treasurer to collect all the taxes therein contained.

Charles A. Pollock, also for the appellant : The treasurer is a ministerial officer, the warrant is his authority and must be strictly pursued: Desty, vol. 2, p. 685. The mistake, in this instance, was made by the assessor. To construe the statute so as to allow a recovery in such a case, would also render the treasurer and his bondsmen liable, and result in making it impossible for a treasurer-elect to secure bondsmen.

Jesse A. Frye, on behalf of Stutsman county, filed a brief on reargument of the case, for appellant: There are no findings showing what part of money received at tax-sale belonged to the county, nor how much of it had been paid over to the school districts. The words "by the mistake or wrongful act of the treasurer," must be allowed some force; they were placed in the statute to limit the cases in which recovery could be had. They are placed first in the section, and are the emphatic words of the section.

An examination of the revenue law establishes the fact that it is left to the assessor to determine what property is liable to taxa-

tion. The assessment roll and the tax-list, based thereon, with the warrant of the county board, is the rule of action for the treasurer, the command of his superiors and his shield when attacked for obeying it. He has no more right to question the decision of the assessor than has a sheriff, with execution, to question whether or not the court erred in rendering judgment. And the direction of the treasurer, in the statute, to sell all lands "liable to taxation" is to be construed with those other provisions of the statute, which require him to execute the warrant, and were intended to mean " apparently liable," liable as they appeared on the list. A ministerial officer is protected by process "fair upon its face." Cooley on Torts, 460, 464; Cooley on Taxation, (2d.Ed.) 800; Savacoal v. Boughton, 5 Wend. 170; Chegarry v. Jenkins, 5 N. Y. 376; Sprague v. Birchard, 1 Wis. 457; Wall v. Trumble, 16 Mich. 228; Loomis v. Spencer, 1 Ohio St. 153; Little v. Merrill, 10 Pick. 547; Erskine v. Hohnback, 14 Wall. 613; Freeman on Executions, § 101. There can be no recovery here apart from the statute, as for money had and received.

Section 84, chap. 132, laws of 1890, does not affect this case. That act will not be construed to operate retrospectively: Cooley Const. Lim. p. 461;Giles v. Giles, 23 Minn. 348. Said § 84, by its teams applies only to sales made under the act of 1890. Even if that section applied, the legislature cannot create an obligation where none existed before. Cooley Const. Lim. 460; Hasbronck v. Milwaukee, 13 Wis. 37.

Messrs. Stone & Newman for the respondent: The money paid by a purchaser of land at tax-sale may, without a statutory provision to that effect, be recovered back, when the county had no jurisdiction to assess or tax the land. Chapman v. City of Brooklyn, 40 N. Y. 372; Bank of Commonwealth v. Mayor of New York, 43 N. Y. 184; Newman v. Supervisors of Livingston county, 45 N. Y. 676; Schwinger v. Hickok, 53 N. Y. 280; Norton v. Supervisors, 13 Wis. 684 (star p. 612); Cortlin v. Davenport, 9 Iowa, 239. And under the principles of these cases it has been repeatedly held that taxes illegally imposed and collected may be recovered back from the municipality into whose treasury they have been paid. Dorr v. Boston, 6 Gray, 131;

Slack v. Norrish, 33 Vt., 818; Gillette y. Hartford, 31 Conn., 356; Saulters v. Victory, 35 Vt., 357.

The rule that a purchaser cannot recover the money paid by him at a void tax-sale, as the cases show is based upon the principle that the purchaser at tax-sale is a volunteer in the payment of taxes legally levied on land subject to taxation, and has been applied only in cases where jurisdiction existed to levy the taxes, but the title of the purchaser failed by reason of non-compliance with the statute in the assessment, levy or sale; in short, the cases, in which the rule of *caveat emptor* applies. Sullivan v. Davis, 29 Kan. 21 (star p. 28); Lyon Co. v. Goddard, 22 Kan. 276 (star p. 389); Lynde v. Inhab. of Melrose, 10 Allen (Mass.) 49; Rice v. Auditor Gen., 30 Mich. 12; Hart v. Henderson, 17 Mich. 218; Hamilton v. Valiant, 30 Md. 139; City v. Humphrey, 84 Ind. 469; McWhinney v. City, 98 Ind. 182; Hilgenberg v. Commissioners, (Ind.) 8 N. E. Rep. 294; State v. Casteel, (Ind.) 11 N. E. Rep. 219.

The statutes in force at the time of the purchase in question upon the completion of the act of purchase by the plaintiff, constituted a contract between the state and the purchaser, upon which the purchaser was entitled to reply, and which the state or the county, acting as a *quasi* municipal sub-division of the state, is bound to respect and execute, and in the event of the failure of the title under such purchase, arising from want of jurisdiction to tax the land, the purchaser may recover his purchase money with the interest allowed by the statute, from the defendant.   Corbin v. Commissioners, 1 McCrary, (C. C. Rep. U. S.) 621; Wheeler v. County auditor, Washington Co., (Minn.) 15 N. W. Rep. 375; Dickeman v. Dickeman, 11 Paige, 484; Fleming v. Roverud, (Minn.) 15 N. W. Rep. 119; Halibert v. Porter, (Minn.) 11 N. W. Rep. 84; Cooley on taxation, 370; Chapman v. Brooklyn, *supra.*

Chapter 28 of the Political Code of 1877, was adopted in the Territory of Dakota in 1868, from the Revised Laws of Nebraska of 1866, and was adopted substantially, without change.

The provisions of the Iowa Code of 1851, were adopted by the Territory of Nebraska in 1858, and contained many of the provisions of our present statutes; subsequent legislation by the

State of Nebraska having developed the precise provisions adopted by the legislature of the Territory of Dakota from the Nebraska statute.

Section 62, chap. 28, Political Code (1620 Comp. Laws), providing for the sale of land for taxes as originally adopted by the territorial legislature, directed the treasurer to sell "all lands on which taxes levied for the preceding year still remain unpaid."

Prior to the adoption of the Revised Codes of 1877 this statute was amended so as to make it read as follows: "All lands, town lots or other real property which shall be liable for taxes of any deecription for the precedmg year or years, and which shall remain due and unpaid."

The form of deed provided by § 1639 of the Comp. Laws is the identical form prescribed by § 72 of the Revised Laws of Nebraska, 1886, and both recite that the lands conveyed are legally liable to taxation.

Section 78, chap. 28, Political Code, (§ 1629, Comp. Laws), in the Iowa Code of 1851, in the exact form in which it is found in the Comp. Laws, (except as to amount to be paid by the county) and in which form it was adopted in 1858 by the Nebraska Legislature, and in 1868, by the legislature of the Territory of Dakota. Since its adoption by the legislature of the Territory of Dakota, and in 1871 it was amended by the Nebraska legislature by adding the words, "or other officer" to the word treasurer, making it apply to the mistake or wrongful act, not only of the treasurer but of any other officer of the county.

These changes could not affect the purchaser, and must be construed as having been made for his benefit, and indicating an intention more fully to protect the title of the purchaser at tax-sale, and to furnish such purchaser assurances upon which he could rely—that only lands liable for taxes at the time of the sale, should be offered for sale.

Whatever respondent's right, in the absence of a statute, § 78, chap. 28, Political Code, (§ 1629 Comp. Laws) is clearly applicable to the case at bar, and justifies a recovery in this action. This statute is cumulative and not exclusive. Norton v. Supervisors of Rock County, 13 Wis. 684 (star p. 612.)

The act of the treasurer in selling the land was wrongful; it

was also the result of a mistake, and the mistake is a mistake of fact. The lands were not taxable, for the reason that the consideration therefor had not been paid to the United States. The payment of that consideration, which was the fee for surveying, was the fact which would render the lands liable to sale. The treasurer evidently supposed this fee had been paid, and for that reason offered the lands for sale. In this he was mistaken as to the existence or non-existence of the fact of the payment of the survey fee, and the mistake is therefore a mistake of fact. Roberts v. Adams Co., (Neb.) 25 N. W. Rep. 726; Same v. Same, 30 (Neb.) N. W. 406; Com's of Saline County v. Young 18 Kan. 440.

A mistake of fact consists in "belief in the present existence of a thing material which does not exist, or of the past existence of a thing which has not existed." § 888, Civil Code, (3512 Compiled Laws).

The mistake on the part of the treasurer, consisted in the belief that the Northern Pacific Railroad company had complied with all the conditions of its grant by the payment of the survey fees; which fact did not exist. The error arose from ignorance of a material fact, rather than from an erroneous conclusion, with a full knowledge of all the facts. Had the treasurer been fully cognizant of all the facts, yet drawn an erroneous conclusion therefrom as to their legal effect he would still not have been protected, as "ignorance of law will not furnish an excuse for any person, either for a breach, or for an omission of a duty." Story, Equity Jurisprudence, § 110; Kerr on Fraud and Mistake, p. 396. And it is therefore immaterial whether the mistake of the treasurer was a mistake of fact or a mistake of law. Northrop v. Graves, 50 Am. Dec. 264; Black v. Ward, 15 Am. Rep. 162, and notes, pp. 183 and 184.

The sale in question was also the wrongful act of the treasurer. He derived all his authority to make it from the statute alone. Parker v. Sexton, 29 Iowa, 421; Hurley v. Powell, 31 Iowa, 64; Rhodes v. Sexton, 33 Iowa, 540; Madson v. Sexton, 37 Iowa, 562; C. R. & M. R. R. Co. v. Carroll County, 41 Iowa 153; Blackwell on Tax Titles, p. 276, (star p. 252;) Black on Tax Titles, § 46; McInery v. Reed, 23 Iowa, 410; Sharp v. Speir, 4 Hill, 76. He is directed to sell "all lands, town lots and other real prop-

erty which shall be liable for taxes of any description for the preceding year or years, and which shall remain due and unpaid."

The power to sell lands for taxes is limited by the sovereign power of the territory, and no authority is conferred upon the treasurer, to sell any other than those directed by the legislature. His sale of other lands is an invasion of property rights which may be prevented by injunction and is therefore wrongful. N. P. R'y Co. v. Traill County, 115 U. S. 600.

The amendment of the statute by the insertion of the direction to sell only lands "which shall be liable for taxes of any description for the preceding year or years" was intended to limit the power of the treasurer. The language is clear. It cannot be construed to mean lands which shall appear from the tax-list to be liable. This would be adding words not necessary to the complete understanding of the meaning of the statute.

The only answer made by appellant to this position, is the one of hardship upon the treasurer. The statute provides that the county shall "save the purchaser harmless, by paying him the amount of principal, and interest at 12 per cent." It further provides that "the treasurer and his sureties shall be liable for the amount to the county, on his bond," and herein consists the hardship complained of by respondent.

It is evident, however, that there is no such hardship. If the treasurer has already paid to the county the money received, such payment would constitute a good defense in an action against him under the statute. Morrill v. Taylor, 6 Neb. 243; Blackwell on Tax Titles, p. 57 (star p. 56). The error in which appellant falls in the construction of this statute is in assuming that the treasurer sells by virtue of his warrant.

In those states in which the treasurer sells land by virtue of his tax warrant, the statute so expressly provides, and no such provision exists in the statute of Dakota. Our statute is unlike that of any other state or territory in that it directs the treassurer to sell only lands "liable for taxes."

The revenue statutes of the territory indicate an intention by the legislature to protect the purchaser at tax-sales from loss in all cases, and § 78, chapter 28 (1629), would seem to be only supplementary to § 79, chapter 28 (1643), and the fact that these

sections in the Political Code appear in the same connection would strengthen the view that each was designed to supplement the other and to provide a protection in all cases, to the tax-sale purchaser. Section 79 (1643) protects him, where there was a legal tax due upon the land.

Section 78 (1629) seems intended to cover all other cases. Section 79 (1643) providing for all cases where there is a tax due upon the property; § 78 (1629) for all cases where there are no taxes due upon the property. In the one case, the person owing the tax must pay it; in the other, as the county had no claim for any taxes it must refund it, and this is the construction put upon section 78 (1629) by the decisions of all the courts which have passed upon it. Coulter v. Mahaska County, 17 Iowa, 92. Scott v. Chickasaw County, 46 Iowa, 253; Morris v. County of Sioux, 42 Iowa, 416; McCann v. County Commissioners Otoe County,(Neb.) 2 N.W. Rep. 707; Roberts v. Adams County, (Neb ) 25 N. W. 726 ; Roberts v. Adams County, (Neb.) 30 N. W. 404.

The state furnishes a public record of "lands liable for taxes" for the guidance of the treasurer in the performance of his duties under the statute. Section 10, chap. 8, Political Code, (77 Comp. Laws.); § 85, chap. 28, Political Code, (1646 Comp. Laws.)

The rule of *caveat emptor* does not apply as against a positive covenant or a statutory provision. The statute becomes a part of the contract of purchase, upon which respondent may rely.

There is in this no requirement that the purchaser shall make any inquiry with reference to the title or the assessment. City v. Humphrey, 84 Ind. 469; McWhinney v. City, 98 Ind. 183; Packard v. New Limerick, 34 Main. 269.

All cases cited by appellant, in support of its position are cases in which the title of the purchaser failed through some irregularity in the assessment, levy or sale.

The record of the assessment, levy and sale constitutes the muniments of title of the purchaser of tax sale, and the rule, extends no further than to require the purchaser to examine this record, and to know at his peril that each step provided by the statute and essential to a valid assessment, levy and sale has been strictly complied with. He is not bound to go beyond the

record, relating to assessment for, levy of, and sale under, the particular tax for which the land is sold.   Hamilton v. Valiant, 30 Md. 140;  Blackwell on Tax Titles, pp. 66, 67.

Respondent's right of action accrued upon the payment of the money to the treasurer.   The wronful act which gave this right of action was the sale of the land by the treasurer to respondent and the receipt by the treasurer of the purchase money, and the treasurer deriving his authority to sell, solely from the statute, the wrongs or mistakes of the other officers of the county, can in no manner affect his liability, or the liability of the county, under this statute.

The treasurer does not derive his authority to sell, from the warrant, but solely from the statute, and the warrant is in no manner material to the sale; it is immaterial whether the treasurer has any warrant whatever, so far as the sale of real estate is concerned.

If the treasurer derives no authority to sell real estate from his warrant, it affords him no protection in such sale.

Even in the case of personal property, the warrant is no protection in cases where there is no jurisdiction.   Waters v. Danies 4 Vt. 601; Henry v. Sargent, 13 N. H. 321; State v. Shacklett, 37 Mo. 280; St. Louis Mutual Life Insurance Co. v. Charles, 47 Mo. 462; St. Louis Building & Saving Association v. Leighton, 47 Mo. 393; Rice v. Wadsworth, 27 N. H. 104; Kelley v. Noyes, 43 N. H. 209; Cunningham v. Mitchell, 67 Pa. St. 82; Walden v. Dudley, 49 Mo. 420.

The respondent is further entitled to recover under § 84, of an act approved March 11, 1890.   The section cited, so far as applicable, is identical with § 97, chapter 11, General Statutes of Minnesota, and in adopting it, the State of North Dakota adopted the construction put upon it by the courts of Minnesota.   McDonald v. Hovey, 110 U. S. 619; Metropolitan R. R. Co. v. Moore, 121 U. S. 558.

The provisions of this section apply as well to void sales made before the passage of the act as to those made after its passage. State v. Cronkite, 28 Minn. 197.

And in answer to Mr. Frye's brief they said, among other things: The argument of counsel proceeds upon the false pre-

sumption that all land is *prima facie,* taxable, and the erroneous conclusion drawn therefrom that in the case at bar, the assessor had jurisdiction on the subject matter.

All land in Dakota is *prima facie,* not taxable. It originally belonged to the government of the United States.

The government of the Territory of Dakota was subordinate to the government of the United States, and not a sovereign power. The exercise of the power of taxation is the exercise of a power of the highest sovereignty. N. P. R. R. Co. v. Rockne, 115 U. S. 600. It cannot be exercised by the subject over the property of the sovereign.

The presumption being that the title to land in the Territory of Dakota, is in the government of the United States, it follows that such land is not *prima facie* taxable, but is taxable only upon proof that the title has passed from the United States. The laws of the territory recognize this principle and provide the means of obtaining such proof. §§ 77 and 1646, Compiled Laws. The land of the United States is not therefore the subject matter of taxation by the Territory of Dakota, and only becomes such subject matter of taxation upon proof that the title has passed from the United States.

It is conceded by the stipulation of facts, that the land in question is a "part of the public domain of the United States." The assessor, therefore, had not jurisdiction of the subject matter at the time of the assessment of the land in question.

The sheriff must determine whether the property upon which he levies is the property of the defendant. This he must do at his peril.

He must also determine whether the property upon which he levies, and which is claimed as exempt from execution, is in fact exempt. In this he acts at his peril. These are questions of fact and law which he is required to determine.

The requirement that the treasurer shall only sell lands over which the territory has power of taxation: or in other words, which are subject matter of taxation is no more difficult of performance, and puts no greater burden upon him than the law has always put upon the sheriff, in determining whether the property he levies upon is the property of the defendant, and in

determining whether such property is or is not exempt from execution; neither does such determination any more render him a judicial officer, than the determination required of the sheriff confers judicial functions upon him.

It is a simple requirement, with which he is furnished ample means for complying, and which the compensation received by him, under the law, would make eminently proper should be placed upon him rather than any other officer, and which complied with furnishes an additional check upon the wrongful sales of government lands for taxes, and which compliance, as we shall see, furnishes his only defense to any action which can be maintained for the prevention or redress of the injury done by such wrongful sale.

BARTHOLOMEW, J. This action was commenced by the presentation by plaintiff of a claim to the board of county commissioners of the defendant county, by which plaintiff sought to recover certain money paid by him as the purchase price of tax-sale certificates on certain real estate sold by defendant's treasurer for delinquent taxes at the annual tax-sale on October 6, 1885. The board of county commissioners refused to allow the claim, and plaintiff appealed under the statute to the district court. In that court the case was tried upon an agreed statement of facts without a jury. From this statement it appears that the real estate in question was a part of the original grant by the United States to the Northern Pacific Railroad Company; that said company had, prior to the levy and sale hereinafter mentioned, disposed of said lands to private parties by deeds and contracts, and such parties were in possession; that no patents had issued for said land; that the railroad company earned said lands after the passage of the act of congress of date July 15, 1870, pertaining to survey fees; that said lands were originally surveyed at the expense of the United States government, and after the passage of said act of congress, and no part of the cost and expenses of said survey had, at the time of said tax-sale, been repaid by said railroad company to the United States, as provided by the last-mentioned act of congress; that in 1884, and prior thereto, the taxing officers of the defendant county proceeded to assess said lards and levy taxes thereon, all of

which remained unpaid on October 6, 1885, and on said date the treasurer of said county proceeded to sell said lands for said delinquent taxes, and the plaintiff purchased the same, and it was to recover the purchase money so paid that this action was brought.

No question is made as to the regularity of the sale, or the tax proceedings leading thereto. The statement of facts, as was intended, brings the lands clearly within the conditions existing in Railroad Co. v. Rockne, 115 U. S. 600, 6 Sup. Ct. Rep. 201. Under the law as settled by that case, the lands in question were not taxable at the time the taxes were assessed and levied, by reason of the non-payment by the railroad company of the survey fees, for which the general government had a lien upon the lands The lands not being taxable, of course nothing passed by the sale. Plaintiff claims to recover his purchase money, with 12 per cent. per annum interest, under a statute to be hereinafter considered; or the purchase price, with legal interest, as for money had and received. The liability of a taxing municipality to refund money paid for void tax-sale certificates, in the absence of a regulating statute, has very recently received full consideration by this court, and such liability was denied. See Budge v. City of Grand Forks, 47 N. W. Rep. 390, (*ante* p. 309). As the briefs of counsel in this case were in the hands of the court, and received careful consideration before the decision was reached in the case against the city of Grand Forks, it will not be necessary for us to say anything upon this point in addition to what we then said, except to note one distinction which is strenuously insisted upon by counsel. In the former case the invalidity of the tax-sale certificates arose from certain irregularities in the proceedings of the taxing officials; in this case the invalidity arose from the entire absence of power in the sovereignty under whose authority this tax-sale was made to impose any tax whatever upon the lands which plaintiff purchased at said sale. In Railroad Co. v. Rockne, *supra*, it was held that when, after the passage of the act of congress of July 15, 1870, lands within the original grant to said railroad company were surveyed by the general government, the government had a lien upon the lands for the expenses of

such survey, and that the fee title could be divested only by payment of such lien.  Since the fee title, coupled with an actual interest in the land, remained in the general government, the territory of Dakota was powerless to tax such land.  It is true that by territorial statute the property of the United States was expressly exempted from taxation; but said statute was unnecessary, as the organic act of the territory forbade the taxation by the territory of the property of the Unted States, and the power cannot exist in a state to tax the property of the United States, even in the absence of all special provisions. McCulloch v. Maryland, 4 Wheat. 316; Van Brocklin v. Anderson, 117 U. S. 151, 6 Sup. Ct. Rep. 670; Tucker v. Ferguson, 22 Wall. 527; People v. U. S., 93 Ill. 30.

Respondent claims that as to all matters of procedure, the rule of *caveat emptor* applies to tax-sale purchasers, but that it goes no further; that such purchaser is under no duty to inquire into the facts giving original jurisdiction to impose the tax; and that a taxing municipality should refund, in a case like this, when it has received money to which it had not only no legal right, but to which the territory was powerless to give it a legal right.  On the argument this distinction impressed us, but upon full investigation we fail to find any direct support for it, either in authority or reason.  The taxing powers of a state are plenary, and extend to all property within its jurisdiction not specially exempt.  *Prima facie*, all property within any given county is taxable.  The statute says, (§ 1541, Comp. Laws:) "All property,  *  *  *  except such property as is hereinafter expressly exempted, shall be subject to taxation."  The organic act of the territory of Dakota (§ 12) says: "The legislative power shall extend to all rightful subjects of legislation not inconsistent with the constitution and laws of the United States; but  *  *  *  no tax shall be imposed upon the property of the United States."  Clearly, this is a limitation—an exception to the general power.  Taxation is a rule; freedom from taxation is the exception.  Whoever would claim immunity must bring himself within the exception.  He cannot make a *prima facie* case for recovery by simply alleging that he has been taxed.  Butler v. Supervisors, 26 Mich. 22; Robertson v. Com-

missioners, 44 Mich. 274, 6 N. W. Rep. 659; Davenport v. Railroad Co., 38 Iowa, 633; Tucker v. Ferguson, *supra.* If any particular property be not taxable, it is because it belongs to a class which by some law has been relieved of the burdens of taxation; and from the very necessities of the situation the power must be lodged somewhere to say whether or not any specified piece of property belongs to any particular class, otherwise no assessment could ever be made. And a particular tract of property that belongs to a class that has been relieved of the burdens of taxation by express legislative enactment is just as free from such burden as the tract that belongs to the class that was never subject to the burden, and the county would have just the same legal right to the money received from a tax-sale of the one tract as of the other, and, as we view it, the duty would devolve upon the assessor in each case, and in the one just as much as in the other, to decide, primarily, whether or not the respective tracts should be assessed. In Foster v. Van Wyck, 41 How. Pr. 493, the court says: "It can make no difference, in regard to the assessor's jurisdiction, whether this immunity from taxation arises from state or national law. In either case the question of liability to taxation is to be determined by the assessors; and they have, of course, jurisdiction to decide it. It is equally a judicial decision in either case, having equal protection from liability for having decided erroneously." Nor must we confound an erroneous decision of the assessor on a matter within his jurisdiction with a want of jurisdiction. The assessor is the first officer to act in the process of the collection of the public revenue. His jurisdiction depends upon the antecedent act of no official. The law fixes his jurisdiction, and for taxation purposes it is co-extensive with its geographical limits, and covers the whole subject-matter of assessments. Every tract of land within those limits must either be placed upon or omitted from the assessment roll, and the matter must in each instance be determined by the assessor.

The cases sometimes speak of the assessor as having no jurisdiction to assess exempt property; but this must always be received in connection with the further proposition that the assessor has the right, and it is his duty, to decide what does and

what does not belong to the exempt classes. It is true that if the law expressly exempts certain described property, then there is no question of exemption left for the assessor to decide, and he is without jurisdiction to assess the property so described. State v. Shacklett, 37 Mo. 280, was a case of that kind. For the full facts in that case it is necessary to consult Railroad Co. v. Shacklett, 30 Mo. 550. The capital stock of the railroad company was exempt, but had been assessed by the assessor, and the collection of the tax enforced by Shacklett, and an action was brought against the collector and his bondsmen to recover the amount, and the court says: "The officer is bound to know the law; and if he executes process which is void, emanating from a court or officer having no jurisdiction, he acts at his peril, and will not be protected where the assessment was illegal. Its illegality was apparent on the very face of the tax-books placed in the collector's hands, as much so as if it had purported to have been made on the court-house or other property which the law expressly exempts from taxation." The language of the learned court, as applied to the case before it, has our full approval. It is no doubt true that, if an assessor should return a tract of land as belonging to and assessed against the United States, such assessment would be a nullity; and the assessor, and all acting after him in the collection or enforcement of such tax, would be trespassers. The same would be true should an assessor assess a schoolhouse and grounds against a school township; and the reason would be, in each case, that on the face of the proceedings the officer would be attempting to do what the law positively declared should not be done. But should the same officer in good faith, and relying upon the record as it appears to him, assess property against private parties in possession, but which in fact belonged to the United States or to a school township, such act would not be without jurisdiction, nor would the officer be a trespasser, because upon the face of the record he would be doing only what he had full authority to do. Of course, a tax-sale following such assessment would pass no title; but that event always follows an illegal sale, and does not prove that the assessor was without jurisdiction.

The agreed statement in this case shows that the lands in question formed a portion of the original grant of lands by the general government to the Northern Pacific Railroad Company. This and similar grants have been held to pass to the grantee an estate in *præsenti*, subject to be defeated by conditions subsequent, and that no patent or conveyance other than the grant was necessary to pass the title. Buttz v. Railroad Co., 7 Sup. Ct. Rep. 100; Railroad Co. v. Peronto, (Dak.) 14 N. W. Rep 103; Railroad Co. v. Smith, 9 Wall. 95; Railroad Co. v. U. S., 92 U. S. 741. The agreed statement repels the supposition of any failure on the part of the grantee to perform the conditions subsequent, and alleges that, prior to the assessment and levy of the taxes for which the land was sold, the Northern Pacific Railroad company had sold said lands to private parties and conveyed the same by deeds and contracts, and such parties were in possession. Now, we are bound to presume, in support of the action of the treasurer, that these transfers appeared of record. At the time of the assessment, § 5 of chapter 99 of the laws of Dakota Territory for 1883 was on the statute books. That section declared that these lands should be taxable as soon as sold, or contracted to be sold, by the railroad company. It is very evident from the agreed statement that the assessor of the defendant county, in perfect good faith, proceeded to assess the lands in controversy to the parties who appeared by the records of said county to hold the title to said lands, and were in possession of the same. This was clearly within his authority and clearly within his duty. The title of the purchaser at the tax-sale based upon this assessment fails, not because the proceedings were not regular and sufficient to pass whatever title the parties had in whose name the land was assessed, but because the title was not in such parties, and was in the United States. The respondent invokes for his protection the rule of *caveat emptor* as applied to sales on execution in so far as that rule relieves the purchaser of any duty to inquire into the jurisdiction of the court that rendered the judgment. But respondent misconceives the condition. There was no lack of jurisdiction in this case. Upon the ground of a common-law right of recovery, we

find no reason to distinguish this case from Budge v. City of Grand Forks, *supra.*

But the plaintiff bases his right to recover more especially upon § 1629 of the Compiled Laws, which is as follows: "When, by mistake or wrongful act of the treasurer, land has been sold on which no tax was due at the time the county is to save the purchaser harmless by paying him the amount of principal, and interest at the rate of twelve per cent. per annum from the date of the sale, and the treasurer and his sureties shall be liable for the amount to the county on his bond, or the purchaser may recover the amount directly from the treasurer." The trial court placed the liability of the county upon this statute, and under the agreed facts reached two conclusions of law: *First,* That the lands were not taxable when the assessment and levy were made. This is conceded. And, *second.* That the lands were sold by the mistake and wrongful act of the county treasurer. This conclusion is challenged, and the case turns upon its correctness. The case is of general interest to the state, as nearly all of the counties that include any portion of the grant to the Northern Pacific Railroad Company are directly interested in the result, and the aggregate of money involved is great. This statute appears as § 78 of chapter 28 of the Political Code of 1877. Under that section the purchaser was entitled to recover the amount to which he would have been entitled had the land been rightfully sold; and by another provision of statute the purchaser was then, and still is, entitled to his principal, and interest at the rate of 30 per cent. per annum, in case of redemption from rightful sales. But the original § 78 was amended by § 1, c. 130, Laws 1885, by which the rate of interest was limited to 12 per cent., and as thus amended it forms § 1629 of the Compiled Laws. The states of Iowa and Nebraska have similar statutes. So far as we can trace it, the statute originated in the Iowa Code of 1851, where it appears in language almost identical with our § 78 of chapter 28 of the Code of 1877. We do not find the Iowa statute construed by the courts of that state until after the Revision of 1860, when the statute appears in a changed form, and reads: "When, by the mistakes or wrongful act of the treasurer, land has been sold on which no taxes were due, or were errone-

ously assessed,"etc.; and closes by making the treasurer liable only for his own acts and those of his deputy. This statute was before the supreme court of Iowa in Coulter v. County of Mahaska, 17 Iowa, 92; but in that case the liability of the county for the principal and interest was conceded, and the sole point in dispute was whether or not the county was liable for 30 per cent. penalty allowed by the Iowa statutes, and the court held that it was not. In Morris v. County of Sioux, 42 Iowa, 416, cited by respondent, there was no question under the statute before the court; and Scott v. Chickasaw Co., 46 Iowa, 253, was a clear case of wrongful assessment, and within the strict words of the Iowa statute.

In Nebraska the law was originally taken from Iowa, but was changed in 1871 to read: " When, by the mistake or wrongful act of the treasurer or other officer, land has been sold contrary to the provisions of this act," etc.; and making such treasurer or other officer liable over to the county on their official bonds. And by a later enactment (see § 131, Revision, 1881, Neb.) the statute is again changed to read as follows: " When, by the mistake or wrongful act of the treasurer or other officer, land has been sold on which no tax was due at the time, or whenever land is sold in consequence of error in describing such land in the tax receipt, the county is to hold the purchaser harmless," etc.; and closing by declaring that such treasurer or other officer shall be liable only for their own and deputies' acts. The cases of McCann v. Otoe Co., 9 Neb. 324, 2 N. W. Rep. 707; Roberts v. Adams Co., 18 Neb. 473, 25 N. W. Rep. 726, and *eo nomine*, 20 Neb. 411, 30 N. W. Rep. 405, are cited in support of the judgment in this case; but all those cases were decided after the change in the statute, and the two latter after the second change. What constitutes the legality is not disclosed in the case in 9 Neb. and 2 N. W. Rep. The court simply remarked that the plaintiff had brought himself within the provisions of their revenue law, and was entitled to recover, and added: " The question of the liability of the treasurer or other officer making the mistake or error is not, under the issues, involved in the case." The other cases were precisely alike in principle. The title to the lands was in the United States, and it was al-

leged "that said lands were wrongfully placed upon said tax-list by said defendant's commissioners and said defendant'a assessor." It is evident is these cases that the sale occurred through the mistake of the assessor, unless, indeed, it is the duty of the treasurer to ascertain for himself, in each instance, whether or not the land is subject to taxation—a point to be considered further on. The statutes of Iowa and Nebraska differ so radically with each other and with ours that it is evident that the decisions under one statute establish no precedent to be followed in the construction of the others. There is another class of statutes making counties liable generally to refund to tax-sale purchasers when the tax-sale is invalid, irrespective of any liability over on the part of any officer through whose mistake or wrongful act the sale was made. Such statutes are found in Kansas, Minnesota, Iowa, Wisconsin, Pennsylvania, New York, and in North Dakota since the passage of chapter 132, Laws 1890, and perhaps other states. The common object of these statutes is doubtless to encourage bidding at tax sales by removing all risk of loss to the purchaser. But it is evident, upon statement, the the decisions under these statutes cannot control this case. We must resort to the statute itself and the ordinary rules of construction. The appellant claims that the county treasurer is a ministerial officer, and that in performing his functions he is protected by his warrant, so long as that warrant bears no inherent evidence of infirmity; that he is bound, under the law, to follow that warrant, and that in the performance of that legal duty he can commit no "wrongful act," within the meaning of the statute; that the county is not liable, under the statute, in any case, unless the county treasurer is primarily liable, and that no liability attaches to the treasurer under the agreed statement.

The respondent contends that the tax-warrant is neither authority nor protection to the treasurer; that his authority to collect taxes must be found directly in the law, and that outside of the law he has no protection; that the law directs him to sell lands that are "liable for taxes," and that this liability must be determined by himself at his peril, without regard to his warrant; and that, if he sells lands not liable for taxes, he thereby

commits a legal wrong—a wrongful act, which a court of equity will redress—and brings himself within the terms of the statute. A consideration of the statutes governing the whole subject of taxation will be necessary to enable us to pass upon these contradictory points. Section 638 of the Compiled Laws, in describing the duties of the treasurer, provides that "he shall be the collector of taxes, shall keep his office at the county seat, and shall attend his office three days in each week. He shall be charged with the amount of all tax-lists in his hands for collection, and credited with the amounts collected thereon and the delinquent list, and shall keep a fair and accurate current account of the moneys by him received," etc. Section 639, following, reads: "The books, accounts, and vouchers of the county treasurer, and all moneys, warrants, or orders remaining in the treasury, shall at all times be subject to the inspection and examination of the board of county commissioners; and at the regular meeting of the board, in January and July of each year, and at such other times as they may direct, he shall settle with them his accounts as treasurer, and for that purpose shall exhibit to them all his books, accounts, and moneys, and all vouchers relating to the same, to be audited and allowed, which vouchers shall be retained by them for evidence of his settlement, and, if found correct, the account shall be so certified; if not, he shall be liable on his bond." Chapter 15, Compiled Laws, being chapter 28 of the Political Code of 1877, was in itself a complete revenue law. It has been superseded by chapter 132 of the Laws of North Dakota for 1890; but this case arose, and must be decided, under the old law. The first section of said chapter 15, being § 1541, provides that all property shall be taxable, unless expressly exempt. Section 1542 enumerates the exemptions, and includes the property of the United States. Section 1544 contains the following: "On or before the twentieth day of January of each year, the board of county commissioners of each county shall provide for the use of the assessor suitable notices and blank forms for the listing and assessment of all property, and such instructions as shall be needful to secure full and uniform assessment and returns, and a list of all the entered lands in his county or district, subject to taxation,"

etc. Section 1547 reads: "All taxable property, real and personal, shall be listed and assessed each year in the name of the owner thereof as soon as practicable on or after the first Monday in May, including all property owned on the first day of April of that year," etc.; and the remainder of that section, and the following sections to 1551, give the assessor full power to assess and list and value all taxable property. Following this are detailed instructions as to making the assessment roll, and the equalization by the board of county commissioners, and the levy of the taxes, and the preparation by the county clerk of duplicate tax-lists—one to be retained by the clerk, and the other forwarded, with the warrant of the county commissioners attached, to the county treasurer; and § 1596 provides as follows: "An entry is required to be made upon the tax-list and its duplicate showing what it is, and for what county and year it is; and the county commissioners shall attach to the lists their warrants under their hands and official seal, in general terms requiring the treasurer to collect the taxes therein levied according to law; and no informality in the foregoing requirements shall render any proceedings for the collection of taxes illegal. The county clerk shall take the receipt of the county treasurer on delivering to him the duplicate tax-list with the warrant of the county commissioners attached; and such list shall be full and sufficient authority for the collection by the treasurer of all taxes therein contained." The following sections to and including 1607 provide for the collection of taxes and form of duplicate receipts—one for the tax-payer, and one for the county clerk—and make the treasurer liable on his bond in case the receipt sent to the clerk does not correspond with his list, and provides for the treasurer's cash book and a duplicate to be kept by the clerk. Section 1608 is as follows: "If on the assessment roll or tax-list there be any error in the name of the person assessed or taxed, the name may be changed and the tax collected from the person intended if he be taxable, and can be identified by the assessor or treasurer; and when the treasurer, after the tax-list is committed to him shall ascertain that any land or other property is omitted he shall report the fact to the county clerk, who, upon being satisfied thereof, shall

enter the same upon his assessment roll, and assess the value, and the treasurer shall enter it upon the tax-list and collect the tax as in other cases." Sections 1610 to 1618, inclusive, provide for the delinquent penalties and liens, and for collection by distress and sale. Section 1612 reads as follows: "Taxes upon real property are hereby made a perpetual lien thereupon against all persons and bodies corporate, except the United States and the territory, and taxes due from any person upon personal property shall be a lien upon any real property owned by such person, or to which he may acquire a title." Commencing with § 1619, the statute provides for deliquent tax-sale of real estate; and § 1621 is as follows: "On the first Monday of October in each year between the hours of nine o'clock a. m. and four o'clock p. m., the treasurer is directed to offer at public sale at the court-house or at a place of holding courts in his county or at the treasurer's office, where by law the taxes are made payable, all lands, town lots, or other real property which shall be liable for taxes of any description for the preceding year or years, and which shall remain due and unpaid; and he may adjourn the sale from day to day until all the lands, lots, or other real property have been offered; and no taxable property shall be exempt from levy and sale for taxes." The following sections to and including § 1634 provide for the manner of sale, form of certificate to be issued to purchaser and for resale in case purchaser does not pay, and for private sale where land is not sold for want of bidders, for time and manner of redemption, and for execution and form of tax-deed. Section 1629, being the section under which this claim is made, has already been quoted in full. The remaining sections of the chapter are miscellaneous in their character. Section 1646 provides that the territorial auditor shall procure from the proper land offices a list of lands becoming taxable for the first time in each county, and forward the same to the respective county clerks on or before May 30th of each year, and § 1656 reads as follows: "If any county treasurer shall fail to make return, fail to make settlement, or fail to pay over all money with which he may stand charged, at the time and in the manner prescribed by law, it shall be the duty of the county clerk, on receiving instructions for that purpose

from the territorial auditor, or from the county commissioners of his county, to cause suit to be instituted against such treasurer and his sureties, or any of them, in the district court of his county."

It will be seen that, as a revenue law, this statute is specific, certain, and complete. The various steps are pointed out, and the various duties assigned, with exactness. What property shall be, and what property shall not be, taxed are specifically stated. The assessor is charged with the absolute duty, and armed with full authority, to assess all taxable property in the county. The board of county commissioners must furnish him with a "list of all entered lands in his county or district subject to taxation;" and "all taxable property, real and personal, shall be listed and assessed each year in the name of the owner thereof," etc.; and the assessment roll shall contain "a list of all taxable lands in such county." An assessor is a judicial, and not a ministerial, officer. Farrington v. Investment Co. (N. D.) 45 N. W. Rep. 191, and authorities cited. His actions are subject to review by the board of equalization or by *certiorari*, but until thus set aside or modified his decisions furnish the legal basis on which officers with subsequent duties must act. And the law having, at the outset, thrown upon the assessor the duty and the power of assessing all taxable property, proceeds upon the presumption that such duty has been done, except that for the greater protection to the revenue it provides that property that has been omitted from the roll may be entered thereon by the county clerk, and valued, and on the tax list, and the taxes collected as in other cases. But the statute will be searched in vain for any authority on the part of the treasurer to strike from his list any property that the clerk has entered thereon. Upon the assessment roll as returned or as modified by the board of equalization the taxes are levied; and the tax-list and duplicate, which must contain "a list of all the taxable lands in the county," are prepared by the county clerk. One list is retained by the clerk. To the other is attached the warrant of the county commissioners; and the same, with the warrant, is delivered to the treasurer. This warrant directs the treasurer "to collect the taxes therein levied

according to law," and such list "shall be full and sufficient authority for the collection by the treasurer of all taxes therein contained." When this list is delived to the treasurer, he is charged with the full amount thereof, and in his settlement with the commissioners he can be credited only "with the amounts collected thereon and the delinquent list;" and the delinquent list, as thus used, refers to such taxes as cannot, by the use of any means provided by the law, be collected; and, if the treasurer fails to thus account for the full amount with which he is charged, he and his bondsmen are liable on his official bond. From this view of the statute it would seem that the office of treasurer was purely ministerial. His duties are assigned, their performance demanded, and punishment prescribed for failure. There is no room for discretion, He is as powerless to question the decision of the assessor as is a sheriff with a special execution to question the correctness of a judgment of a court with acknowledged jurisdiction.

But respondent claims that judicial powers are given to the treasurer under § 1621, already quoted, where he is directed to sell all lands "which shall be liable for taxes of any description." The contention is that the order to sell lands that are liable for taxes is equivalent to an order to sell no lands that are not so liable, and that by said section the duty is thrown upon the treasurer to decide in each instance whether or not the property is so liable. This construction, if correct, largely supersedes the office of assessor. If the treasurer is to disregard his warrant, and sell no property not liable for taxes, even though the same appears on his list, it is at least equally true that he must sell all lands that are liable for taxes, although the same do not appear on his list. To perform that duty, the treasurer must at once recanvass the county, and decide for himself what property is, and what property is not, subject to taxation. We do not believe such was the legislative purpose. The language is no broader in § 1621 than in § 1593, where the clerk is directed to prepare a list which shall contain "a list of all taxable lands in the county." The mandate to the clerk is as positive as the mandate to the treasurer, but the clerk is to make "a list of all taxable lands in the county, * * * with the names

of the persons or parties in whose names each subdivision was listed," etc.; clearly showing that his list is to contain only what the assessor has listed. We think § 1621 must have a similar construction. The treasurer can strike nothing from his list, and is under no obligations to go outside of his list. But respondent insists, further, that what is now § 1621, when originaily passed by the territorial legislature, directed the treasurer to sell "all lands on which the taxes levied for the preceding year still remain unpaid," and that the amendment introduced into the Code of 1877 directing the treasurer to sell "all lands liable for taxes of any description for the preceding year or years" was intended to throw this additional and judicial function upon the treasurer, and that if such was not its purpose it is meaningless and inexplicable. We think the amendment susceptible of a very simple explanation. Section 1612, Comp. Laws, as it appeared in the Code of 1877, provided, as it does now, that "taxes due from any person upon personal property shall be a lien upon any real property owned by such person, or to which he may acquire a title." If real estate could only be sold to satisfy the taxes levied thereon, clearly the provision relative to the lien on realty of taxes on personlty would be a nullity; and in order to give effect to that provision, it was necessary to direct all lands to be sold that were "liable for taxes of any description," and that undoubtedly was the purpose of the amendment. Viewing the whole statute and all its parts, we are still forced to regard the treasurer as a purely ministerial officer.

Ministerial officers are protected by the process under which they act when that process is fair upon its face, and while their acts are strictly within its terms, even though such process was issued improperly, and without jurisdiction. There may have been a doubt as to this proposition at one time, but we deem the law too well settled now to make a discussion of the cases profitable. See Cooley, Tax'n, (2d Ed.) §§ 797, 798; Freem. Ex'ns, § 101; Savacool v. Boughton, 5 Wend. 170; Chegary v. Jenkins, 5 N. Y. 376; Wall v. Trumble, 16 Mich. 228; Sprague v. Birchard, 1 Wis. 457; Loomis v. Spencer, 1 Ohio St. 153; Little v. Merrill, 10 Pick. 547; Erskine v. Hohnback, 14 Wall. 613. The

cases of Association v. Lightner, 47 Mo. 393 and Insurance Co. v. Charles, id. 462, and Walden v. Dudley, 49 Mo. 419—cited by respondent to show that the collector is not protected where property is exempt—do not go to the extent claimed.

In case of 47 Mo. 393, it is said: "But the collector is an executive officer, and has always been protected by his precept, unless it appears upon its face to have been issued against property wholly exempt from taxation." And in the case on page 462, same volume, it is said: "If the tax-list shows jurisdiction, he (the collector) is protected." And in the case in 49 Mo. this language is used: "Were the property expressly and unconditionally exempt, and by plain description, the collector would be bound to know it." An examination of these authorities shows beyond question that they held the collector protected in all cases unless his warrant showed upon its face that property had been assessed which was absolutely exempt by law, and in such a case the process is not "fair on its face." If, therefore, it should be admitted that the assessor in this case was without jurisdiction, still the treasurer would be protected; for there is no pretense that there was anything on the face of the warrant, either in its recitals or omissions, that apprised the treasurer of any defects in jurisdiction, or that the treasurer had any such knowledge outside of his warrant.

But it is insisted that the warrant is not the treasurer's authority; that it is not the process under which he acts; that he acts under the law. With our construction of the law, perhaps, the point is not very material in this case. It is no doubt correct, as the supreme court of Ohio held, under a statute similar to ours, (see Loomis v. Spencer, *supra,*) that the treasurer's authority comes both from the law and his warrant. He could not sell in a summary manner if the statute did not so provide. The law furnishes him the instrumentalities; the warrant furnishes him the subjects upon which the law's instrumentalities are to be exercised. The supreme court of Iowa, in Parker v. Sexton, 29 Iowa, 421, held that the warrant was not the treasurer's authority to sell. The question before the court was whether or not a sale made by a treasurer under a defective warrant was a valid sale, (the warrant was without seal;) and that

court, undoubtedly correct, held that it was. This case was followed by Hurley v. Powell, 31 Iowa, 64; Rhodes v. Sexton, 33 Iowa, 540; Madson v. Sexton, 37 Iowa, 562; and Railroad Co. v. Carroll Co., 41 Iowa, 153—all involving the same point, and decided in the same way. But the learned supreme court of Iowa, in Parker v. Sexton, *supra*, after quoting the section that is substantially the same as our § 1621, says: "Now, it will be observed that by the provisions of this section the tax-warrant requires the treasurer to collect, and is authority for the collection of the taxes in the tax-list contained. But it does not authorize him to collect taxes therein named by distress and sale of personal property, nor to sell real estate; nor does it exempt him from liability for illegal or erroneous taxes collected by him. In short, the tax-list and warrant, as provided by this section, becomes simply the authority to collect or receive the taxes: nothing more." This language does not meet our approval as applied to our statute. When the warrant requires the treasurer to "collect the taxes therein levied according to law," we think it does not simply mean to receive the taxes therein levied according to law, but that it requires the treasurer, if necessary, to use all the instrumentalities of the law to enforce the collection of the taxes. But as the treasurer, in selling the lands in question, acted strictly in accordance with law, and within the terms of his warrant, regular and fair on its face, with no inherent indications of infirmity, he is fully protected, unless the peculiar, and not altogether perspicuous, language of the statute imposes a liability contrary to the general rules governing such cases.

The statute, already quoted in full, says: "Where, by mistake or wrongful act of the treasurer, land has been sold on which no tax was due at the time," etc. Respondent contends that every sale of land on which no tax is due is a legal wrong —a wrong for which there is a remedy in a court of equity— and that, as the sale is the act of the treasurer, it is in every instance his wrongful act; that in an action brought to enjoin such sale, or to cancel such certificates of sale, the treasurer is a necessary party, and that judgment will in such action be rendered against him for costs, as a consequence of his wrongful act; that it would be a strange anomaly if a court of equity

should interfere by injunction to prevent a rightful act. But it often happens that, upon the record made, a certain act may be entirely rightful, and it may be the duty of the appropriate officer to perform such act, yet, by reason of matters *dehors* the record, its performance may be enjoined. A sheriff may have an execution in his hands which he is in duty bound to serve, but, by reason of matters *dehors* the record, the collection of the judgment on which the execution issued may be enjoined. Says Mr. Cooley: "The general rule is that such an officer (ministerial) is legally protected against any illegalities except those committed by himself, and it is not illegal for him to execute process that comes to him as a ministerial officer from other officers whose action he has no authority to revise or review. Indeed, if we are to judge by the weight of authority, it is more than doubtful if he has any right to do otherwise than to proceed with its execution, even though he may be satisfied that lying back of it are illegalities that would defeat the tax, and entitle one who should pay it to reimbursement." Cooley, Tax'n, (2d Ed.) 798; Wall v. Trumbull, *supra*. Nor does the incident of costs furnish any criterion by which to gauge the character of the act. If the action were brought after the treasurer who made the sale had gone out of office, his successor would be a proper and necessary party defendant and judgment for costs might be rendered against such successor, but no wrongful act could be charged to him. But will the language of the statute bear the construction that respondent seeks to place upon it? A careful reading of the statute makes it clear to our minds that the legislature never intended to place any ultimate liability upon the counties. In every instance where the county is required to pay under the statute; "the treasurer and his sureties shall be liable to the county for the amount on his official bond;" or, in every case where liability arises under the statute, the party "may recover the same directly from the treasurer." The treasurer and his bond are the ultimate sources of responsible liability; and, upon respondent's theory, whenever lands are sold upon which no taxes are due, that liability arises. It matters not whether the sale occurred through the carelessness or mistake or willful act of the property owner in with-

holding from the assessor facts which would show his property exempt from taxation; or the mistake of the assessor in adjudging that to be taxable which was not, or the wrongful act of the assessor in purposely listing property that he knew to be exempt; or whether it be the mistake of the clerk in copying the assessor's roll, or the wrongful act of the clerk in purposely falsifying that roll; or whether it be the mistake of the treasurer in failing to give credit for taxes paid, or in applying the credit to the wrong description; or the wrongful act of the treasurer in purposely selling lands on which he knew the taxes to have been paid—alike, in each case, the treasurer's bond is the guaranty against the financial loss.

We do not think the statute is so elastic. The first and most important thing in the section is a limitation. Before the rule is reached, the limitation is announced. The use of the limitation discloses the legislative understanding that it was necessary, in order to exclude cases that would otherwise come within the statute. If the legislature intended to throw upon the treasurer that universal responsibility for which respondent contends, then this limitation is worse than surplusage; it is misleading, confusing, and contradictory. We cannot charge that reproach upon the legislature. If the statute read, "When land has been sold on which no tax was due," etc., then it would be entirely perspicuous, and respondent's position would be unassailable; but with the limitation introduced, the position is entirely untenable. It is true that, whenever land is sold for taxes on which no tax was due, there exists a legal wrong. But whose wrong? We have seen that the treasurer has no discretion; he must follow his warrant. It cannot be that, where the law commands a thing to be done under pain of punishment, to do that particular thing is a wrongful act, which in turn must be followed by punishment. The wrong is the wrong of the assessor who assessed property that was not subject to assessment, and not of the mere minister who could not question his instruction.

There was a statement on argument that the treasurer made a mistake of fact in supposing that the survey fees had been paid when they had not, and that the sale was the result of such

mistake. Without holding that the treasurer could make a mistake upon that point, or that it would affect this case if he did, it is a sufficient answer that there is no suggestion of any thing of the kind in the agreed statement of facts. We conclude that the sale in this case was not made by the mistake or wrongful act of the treasurer. We reach that conclusion without considering the effect that the opposite conclusion would have upon county treasurers. When we consider that result, our conclusion becomes irresistible. In all cases of liability under the statute as it was passed, the treasurer was required· to refund to the purchaser the purchase price, with 30 per cent. per annum, interest from the date of sale, and since the amendment of 1885, with 12 per cent. per annum interest. The statute will be searched in vain for any source of reimbursement to the treasurer. He may have exercised the utmost good faith, and been without personal fault, and have scrupulously accounted to the county for all money received from such sales; yet, if the statute covers the case, his liability is absolute, and must be met. It may be that where he has turned over to the county the money received from such sale, and is subsequently compelled to repay the money, with the enormous interest, to the purchaser, he can' recover from the county the money received by it, with legal interest from the time of demand made; but that would be very inadequate financial consolation to the man who had been compelled to pay interest on that sum at 12 or 30 per cent. for a term of years.

The case at bar illustrates most forcibly the injustice that would follow such a construction of the statute. The question of the taxability of the lands within the original grant to the Northern Pacific Railroad Company had been in litigation for years. The district court of Dakota Territory had held that they were taxable, and on appeal to the supreme court of the territory the judgment was affirmed by a divided court. · A rehearing was granted, and upon a second argument the judgment was again affirmed by a divided court and from that judgment of affirmance an appeal was taken to the supreme court of the United States. Pending that ·appeal, the lands here involved were assessed, and sold for taxes to plaintiff. Prior to such

assessment and sale, the supreme court of Minnesota had held other portions of the same grant, under identical conditions, to be taxable. Cass Co. v. Morrison, 28 Minn. 257, 9 N. W. Rep. 761. After the sale of the lands to plaintiff, the supreme court of the United States, in deciding the appeal from the supreme court of the Territory of Dakota, held the lands not taxable. Railroad Co. v. Rockne, *supra.* But to hold that the county treasurers are liable under this statute for all tax-sales of lands within said grant prior to the decision in the Rockne case requires us to say that because the county treasurers, in a matter wherein they acted in a purely official capacity, followed not only their warrants, but also the decision of the supreme court of the territory and of the supreme court of the state of Minnesota— the only courts that had passed upon the question at that time— therefore they incurred liabilities which must inevitably bankrupt them and their bondsmen. In our judgment, any statute that would permit, much less compel such a result would be a stigma upon legislation.

Another point is made in the case. As has been stated, chapter 132 of the Laws of North Dakota for 1890, approved March 11, 1890, provides generally for a recovery by the purchaser of the purchase money paid for invalid tax-sale certificates. Section 84 reads as follows: "When a sale of land, as provided in this act, is declared void by judgment of court, the judgment declaring it void shall state for what reason such sale is declared void. In all cases where such sale has been, or hereinafter shall be, so declared void, or any certificate or deed issued under such sale shall be set aside or cancelled for any reason, or in case of mistake or wrongful act of the treasurer or auditor, land has been sold upon which no tax was due at the time, the money paid by the purchaser at the sale, or by the assignee of the state upon taking the assignment, and all subsequent taxes penalties and costs paid by such purchaser or assignee, shall, with interest at the rate of 10 per cent. per annum from the date of such payment, be returned to the purchaser or assignee, or the party holding his right, out of the county treasury, on the order of the county auditor; and so much of said money as has been paid into the state treasury shall be charged to the state by the

county auditor, and deducted from the next money due the state on account of taxes. The county treasurer or auditor shall be liable on their bond for any·loss occasioned by any such wrongful act." This section is nearly identical with § 97, c. 11, Gen. St. Minn., and it is claimed that in adopting the section this state adopts it with the construction put upon it by the courts of Minnesota. Such is undoubtedly the general, rule. McDonald v. Hovey, 110 U. S. 619, 4 Sup. Ct. Rep. 142; Railroad Co. v. Moore, 121 U. S. 558, 7 Sup. Ct. Rep. 1334. The supreme court of Minnesota in State v. Cronkhite, 28 Minn. 197, 9 N. W. Rep. 681, held that the Minnesota statute applied to sales made before, as well as after, the act. There was a special reason for that decision that is not applicable here, but a scrutiny of the two statutes will disclose that they are not identical, and the decision rests squarely upon the variation. Our statute says: "When a sale of land, as provided in this act, is declared void," etc., and "in all cases where any such sale (*i. e.*, a sale as provided in this act) has been, or hereinafter shall be, so declared void," etc. The Minnesota statute reads: "When a sale of lands, as provided in this act, is declared void by judgment of court, the judgment declaring it void shall state for what reason such sale is declared void. In all cases where any sale has been, or hereafter shall be, so declared void," etc. The learned supreme court of Minnesota say: "The whole argument of appellant in support of his position hinges upon the assumption that the words "so declared void" refer exclusively to sales made subsequent to and under the act, and thereafter declared void, as prescribed in the first clause of the section. We think any such construction of the act is untenable. No possible reason can be suggested why the legislature should leave a class of cases like the present unprovided for.

Similar statutes for the protection of purchasers at tax-sales have been in force for years,broad enough to cover all such cases; and it can hardly be supposed that by re-enacting, in substance, an existing law, the legislature designed to omit from its benefits any such class of cases without any conceivable reason for doing it. * * * But we think the language will not reasonably admit of the construction claimed. The first clause of the

section simply provides what shall be the form of any judgment thereafter to be rendered, declaring void a sale of lands for taxes. The second clause is a general provision for the reimbursement of all purchasers at tax-sales declared void by judgment of court. Its language is broad and comprehensive, and covers every tax-sale declared void by judgment of court, without regard to whether the sale was made before or after the act." In our statute the recovery is limited to sales made as provided in the act. Minnesota had substantially the same law on her statute books for years before. The new enactment repealed the old, but if a recovery could not be had under the new law for void sales made under the old, then a limited number of cases would come neither under the new or the old law, and the court very properly said that the legislature never could have intended such a result. But this state had no such law until the enactment of chapter 132 of the laws of 1890, and there is no authority in that statute for applying its benefits to a tax-sale made in 1885.

We find no ground upon which respondent has any right of recovery in this case. The district court is directed to reverse its judgment, and dismiss the case; appellant to recover costs in both courts. Reversed. All concur.

REPORTER: See Wallace v. County, 6 Dak. 1.