COUNTY OF STUTSMAN, Appellee,

v.

STATE HISTORICAL SOCIETY OF
NORTH DAKOTA and State
Historical Board, Appellants.

Civ. No. 10963.

Supreme Court of North Dakota.

July 11, 1985.

Charles J. Gilje, State's Atty., Jamestown, for appellee.

Michael Geiermann, Asst. Atty. Gen., Bismarck, for appellants.

MESCHKE, Justice.

The State Historical Society of North Dakota (Historical Society) and the State Historical Board (Board) appeal from a district court judgment which reversed the Board's decision to list the 1883 Stutsman County Courthouse (Courthouse) in James-

town, North Dakota, on the State Historical Sites Registry (Registry).

Whenever a site is placed on the Registry, the state's departments and agencies, and its political subdivisions, are prohibited from altering the physical features or historic character of the site without first obtaining approval from the superintendent of the Board. Section 55–10–08(2), N.D.C.C.

The Stutsman County Courthouse, built in 1883, is the oldest existing courthouse in the State. As determined by the Board, it has "great physical integrity" while retaining "most of its original physical features." The Board's findings describe it as "a distinct illustration of the Gothic revival style of architecture," as "one of the best examples of that style among the State's buildings," and as distinctly illustrating "changes in building construction technology" by its "use of pressed metal throughout its interior." The Board's findings identify that it was designed by Henry C. Koch, a "prominent and prolific Milwaukee architect," and is believed to be "North Dakota's sole known example of work" by him. It is "associated with Anton Klaus an early Jamestown settler," who donated the land and purchased the plans for the Courthouse. The findings are not disputed; it is the Board's conclusion that it had "the authority by virtue of Section 55–10–02(4), N.D.C.C., to designate a property to be listed in the State Historic Sites Registry," which is challenged.

On August 26, 1983, the Courthouse and sheriff's residence and jail were nominated for listing on the Registry.[1] The Board heard the nomination at its quarterly meeting on November 4, 1983, following a public hearing at Jamestown. At that meeting, a motion carried to place the Courthouse on the Registry.

The Board then discussed a time frame for Project 83, a nonprofit organization, to raise money to preserve and restore the Courthouse. A motion carried to allow Project 83 three years to raise the necessary funds. Depending upon progress made after that time, the Board indicated it would consider either an extension of time for Project 83 to continue its efforts or removal of the Courthouse from the Registry. These discussions, as reflected in the minutes, also indicated an awareness that existing powers and procedures of the Board, unless changed, did not provide a method for removing the listing from the Registry, if Project 83 failed to raise sufficient funds for adequate preservation of the Courthouse.

The Board informed the Stutsman County Commission by certified letter on November 25, 1983, that it had listed the Courthouse on the Registry as a state historical site. On December 22, 1983, Stutsman County filed a notice of appeal from the "order" of the Board dated November 25, 1983. Although there were several specifications of error raised in the notice of appeal, Stutsman County emphasized in its brief to this Court that the principal reason for the appeal was because there "was no rule to allow for the State Historical Board to remove from the State Historical Sites Registry a given property once it was placed on that registry unless it was substantially lost or destroyed."[2]

---

1. The nomination was subsequently amended to withdraw the sheriff's residence and jail.

2. The notice of appeal to the district court provided, in part, as follows:

"The appellee [Board] erred in that it assured persons in attendance at the meeting which considered the 1883 Stutsman County Courthouse for the Historic Sites Registry that if certain corrective work was not done on the site within three years, the appellee would review the appointment to the State Historic Sites Registry. Appellant [County Commission] was told that the appellee could remove the same from the State Historic Sites Registry at that time if it so decided when, in fact, article 40–02–01–09 provides that the appellee may remove properties from the State Historic Sites Registry only 'when the features or characteristics for which the property was determined significant have been substantially lost or destroyed', with there being no authority in article 40–02 providing for its removal from the State Historic Sites Registry without the building so 'substantially lost or destroyed'. That therefore once the 1883 Stutsman County Courthouse is on the Historic Sites Registry, it cannot come off until such

The Board again discussed placement of the Courthouse on the Registry at its February 3, 1984 quarterly meeting. The discussion dealt with financial implications of placing the Courthouse on the Registry as well as whether it would be legally possible to remove it from the Registry at a future date. The Board ratified its earlier action and issued formal findings of fact, conclusions of law, and an order. Stutsman County filed a petition for rehearing which was denied by the Board at its May 4, 1984 meeting, and the County appealed to the district court.

The district court reversed the Board's decision, concluding that the Board had no authority to place the Courthouse on the Registry under Section 55-10-02(4), N.D.C.C., which provides as follows:

> "4. The 'state historic sites registry' shall be a listing of sites designated by the state historical board of the state historical society as possessing historical value, as defined in this section, and including but not limited to sites enumerated in this chapter. This registry shall be published and updated annually and dis-

time as it is destroyed, and not merely at such time as the appellee decides it should come ·off."

**3.** The 1985 Legislature amended Section 55-10-02(4), N.D.C.C., to read as follows:
"4. The 'state historic sites registry' shall be a listing of sites designated by the state historical board ~~of the~~ as state ~~historical society as possessing historical value, as defined in this section,~~ historic sites according to written criteria established by the board and including but not limited to sites enumerated in this chapter. Sites which have lost characteristics for which they were determined to meet the criteria may be removed from the registry by the state historical board. This registry, and any subsequent annual updates thereto, shall be published ~~and updated annually~~ and distributed ~~in accordance with state law dealing with publications.~~" [Deleted language struck, new language underscored.]

**4.** Section 28-32-19, N.D.C.C., provides as follows:
"*28-32-19. Scope of and procedure on appeal from determination of administrative agency.* The court shall try and hear an appeal from the determination of an administra-

tributed in accordance with state law dealing with publications."[3]

The district court concluded that because "the legislature inexplicably failed to set forth in the section a definition of the words 'historical value'," it had "by that omission, deprived the state historical board of authority to add new sites to the Registry." A judgment reversing the Board's decision was entered on February 14, 1985.

On April 3, 1985, the Stutsman County commission passed a resolution to demolish the Courthouse. Thereafter, the State filed a notice of appeal to this Court and a motion for stay of judgment which was denied by the district court. This Court entered an order staying the judgment pending a hearing and decision on the merits.

Whenever an administrative agency decision is appealed to a district court and then to this Court, we review the decision of the agency and look to the record compiled before the agency. *Garner Public School District No. 10 v. Golden Valley County Committee*, 334 N.W.2d 665 (N.D.1983). Our review is governed by Section 28-32-19, N.D.C.C.[4] The factual

tive agency without a jury and the evidence considered by the court shall be confined to the record filed with the court. If additional testimony is taken by the administrative agency or if additional findings of fact, conclusions of law, or a new decision shall be filed pursuant to section 28-32-18, such evidence, findings, conclusions, and decision shall constitute a part of the record filed with the court. After such hearing, the court shall affirm the decision of the agency unless it shall find that any of the following are present:
1. The decision or determination is not in accordance with the law.
2. The decision is in violation of the constitutional rights of the appellant.
3. Provisions of this chapter have not been complied with in the proceedings before the agency.
4. The rules or procedure of the agency have not afforded the appellant a fair hearing.
5. The findings of fact made by the agency are not supported by a preponderance of the evidence.
6. The conclusions and decision of the agency are not supported by its findings of fact.

basis of an administrative agency decision is reviewed in a limited manner to determine whether or not (1) the findings of fact are supported by a preponderance of evidence, (2) the conclusions of law are sustained by the findings of fact, and (3) the agency decision is supported by the conclusions of law. *Asbridge v. North Dakota State Highway Com'r*, 291 N.W.2d 739 (N.D.1980). In addition to reviewing the factual basis for the agency's decision, we also consider whether the decision violates the appellant's constitutional rights and is in accordance with the law. *Garner Public School District No. 10, supra.*

The Board contends that the district court erred in determining that the Board did not have the authority to place sites on the Registry because "historical value" is not further defined as contemplated by Section 55–10–02(4), N.D.C.C. The Board asserts that if the district court's decision were followed there would be no entity in North Dakota "which will be able to preserve historic sites and antiquities for the inspiration and use of the people …," as intended by the Legislature.

▇▇▇▇ Our duty is to ascertain the intent of the Legislature. *E.g., Rheaume v. State*, 339 N.W.2d 90 (N.D.1983). A statute must be considered as a whole to determine the intent of the Legislature. *E.g., In Interest of Nyflot*, 340 N.W.2d 178 (N.D. 1983). The Legislature's intent must be sought initially from the statutory language. *E.g., Morton County v. Henke*, 308 N.W.2d 372 (N.D.1981). If the language of a statute is clear and unambiguous, the letter of the statute cannot be disregarded under the pretext of pursuing its spirit because the legislative intent is presumed clear from the face of the statute. Section 1–02–05, N.D.C.C.; *In Interest of B.L.*, 301 N.W.2d 387 (N.D.1981). However, if the language of a statute is ambiguous or of doubtful meaning or if adherence to the strict letter of the statute would lead to an absurd or ludicrous result,

the court may resort to extrinsic aids to interpret the statute. *Morton County v. Henke, supra; In Interest of B.L., supra.* Statutes must be construed to avoid absurd and ludicrous results, *e.g., In Interest of B.L., supra.* All sections of a statute must be construed to have meaning because the law neither does nor requires idle acts. Section 31–11–05(23), N.D.C.C.; *State v. Nordquist*, 309 N.W.2d 109 (N.D.1981). In short, we are guided by the common-sense principle that a statute is to be read to give effect to each of its provisions, whenever fairly possible.

▇▇▇▇ Although the Legislature stated in Section 55–10–02(4), N.D.C.C., that "historical value" was to be further "defined" in that section, the Legislature did not go on to define that term. If the Board does not have authority to place sites on the Registry because of the omission of further definition of "historical value," Section 55–10–02(4), N.D.C.C., would be entirely surplusage and would have no effectiveness. We believe that such a construction would be significantly inconsistent with applicable rules of statutory construction. It is better that the dangling phrase, "as defined in this section," be construed as surplusage, than to construe the entire section as surplusage, and thus render it ineffective. Accordingly, we reject the district court's interpretation of the statute and will look to extrinsic aids to ascertain the Legislature's intent.

Section 1–02–39, N.D.C.C., sets forth these extrinsic aids:

> "If a statute is ambiguous, the court, in determining the intention of the legislation, may consider among other matters:
>
> 1. The object sought to be attained.
> 2. The circumstances under which the statute was enacted.
> 3. The legislative history.
> 4. The common law or former statutory provisions, including laws upon the same or similar subjects.

"If the decision of the agency is not affirmed by the court, it shall be modified or reversed, and the case shall be remanded to the agency

for disposition in accordance with the decision of the court."

5. The consequences of a particular construction.

6. The administrative construction of the statute.

7. The preamble."

■ Section 55–10–01, N.D.C.C.,[5] declares that the object of Chapter 55–10, N.D.C.C., is to preserve historic sites for the benefit of the people of North Dakota. The February 3, 1975 minutes of the Senate State and Federal Government Committee pertaining to the 1975 amendments[6] to Section 55–10–02(4), N.D.C.C., give us some legislative background:

"*Senator Homuth,* sponsor of the bill, asked for this bill because he was concerned that the heritage of North Dakota is being overlooked by North Dakotans. He felt that we are not doing a good job of deciding what a historic site is and how it should be protected. The legislature ought not to try to do this. This bill provides that the state historical society would maintain the historic sites registry and that it would be updated and published annually.

. . . . .

"*Mr. James Sperry, superintendent of the state historical society,* testified in favor. He said that the state historic registry was created in 1967. He has reservations about the format in the century code. It is lengthy and there is a substantial section in the code devoted to the registry. It is stated that it be updated every two years. This bill provides a better way of defining the regis-

try and the authority to mark sites included in the registry. *The state historical board is given the responsibility of deciding which sites go into the registry."* February 3, 1975 Minutes of State and Federal Government Committee of Senate regarding Senate Bill 2367. [Emphasis of the last sentence is added.]

This history, coupled with the clear policy enunciated in Section 55–10–01, N.D.C.C., and the ineffective consequences of a contrary construction, leads us to conclude that Section 55–10–02(4), N.D.C.C., must be construed to give the Board the authority to place sites of historical value on the Registry.[7]

We conclude that the district court erred when it determined that the Legislature's failure to define historical value deprived the Board of its authority to place sites on the Registry. However, we have held that a judgment will not be reversed merely because it rests upon inapplicable reasons if the results are the same under applicable reasons. *KFGO Radio, Inc. v. Rothe,* 298 N.W.2d 505 (N.D.1980). Consequently, we will consider the remaining points raised by Stutsman County which it asserts are sufficient to support the district court's decision.

Stutsman County contends that the Legislature impermissibly delegated the authority to define and determine whether a site has historical value to the Board. Stutsman County also contends that the term "historical value" is unconstitutionally vague, citing *Texas Antiquities Com-*

---

5. Section 55–10–01, N.D.C.C., provides:

"*55–10–01. Policy.* It is hereby declared to be in the public interest to provide for the preservation of historic sites, buildings, structures, and antiquities of state and national significance for the inspiration, use, and benefit of the people of the state of North Dakota."

6. Subdivision (4) was added to Section 55–10–02, N.D.C.C., in 1975. (1975 N.D.Sess.Laws, Ch. 500). Before 1975, the Legislature determined what were historical sites and those sites were, and are, enumerated as such in our statutes. See Sections 55–10–03; 55–10–04; 55–10–05; 55–10–06, N.D.C.C. In 1975, the Legislature specifically gave the Board the authority to place sites of "historical value, as defined in this sec-

tion" in the Registry; however, that term was not defined. (1975 N.D.Sess.Laws, Ch. 500, § 1; Section 55–10–02(4), N.D.C.C.) In 1975, the Legislature also amended Sections 55–10–07 and 55–10–08, N.D.C.C., to specifically refer to and incorporate Section 55–10–02(4), N.D.C.C.

7. The fact that the Legislature itself has not added any sites to the statutory list in Section 55–10–03 through 55–10–05, N.D.C.C., since 1975, as it had done before its amendments to Chapter 55–10 in 1975, may also support our conclusion. It tends to indicate a legislative understanding that the responsibility for identifying historical sites to be preserved was effectively delegated to the Board in 1975.

*mittee v. Dallas County Community College District,* 554 S.W.2d 924, 18 A.L.R.4th 973 (Tex.1977).

 Unless expressly authorized by the State Constitution, the Legislature may not delegate its purely legislative powers to any other body. *Ralston Purina Company v. Hagemeister,* 188 N.W.2d 405 (N.D. 1971). However, the Legislature may delegate powers which are not exclusively legislative and which the Legislature cannot conveniently do because of the detailed nature. Simply because the Legislature *may* have exercised a power does not mean that it *must* exercise that power. In *Ralston Purina Company, supra,* we pointed out that the true distinction between a delegable and non-delegable power was whether the power granted gives the authority to make a law or whether that power pertains only to the execution of a law which was enacted by the Legislature. The power to ascertain certain facts which will bring the provisions of a law into operation by its own terms is not an unconstitutional delegation of legislative powers. *Ferch v. Housing Authority of Cass County,* 79 N.D. 764, 59 N.W.2d 849 (1953). However, the law must set forth reasonably clear guidelines to enable the appropriate body to ascertain the facts. *Ralston v. Purina Co., supra.*

 We believe that the authority to put historical sites on the Registry is a proper delegation of power by the Legislature. The Legislature could, and before 1975, did place sites on the Registry. However, our increasingly complex society and the detailed nature of the issues with which the Legislature must deal makes this a task which the Legislature cannot conveniently perform. The Legislature has conferred upon the Board the power to ascertain, under the law enacted by it, the facts of each particular situation to determine whether a site has historical value. The power granted does not give the Board the authority to make law but pertains only to the execution of a law enacted by the Legislature.

 Furthermore, we do not believe the term "historical value" is unconstitutionally vague. In interpreting a statute, words must be given their plain, ordinary, and commonly understood meaning; and consideration should be given to the ordinary sense of the statutory words, the context in which they are used, and the purpose which prompted their enactment. Section 1–02–02, N.D.C.C.; *Morton County v. Henke, supra.*

Webster's New World Dictionary, Second College Edition, defines "historical":

"1. of or concerned with history as a science; 2. providing evidence for a fact of history; serving as a source of history; 3. based on or suggested by people or events of the past."

That same source defines history as what has happened in the life or development of a people, country, or institution. Pertinent definitions of "value" are:

"5. that quality of a thing according to which it is thought of as being more or less desirable, useful, estimable, important, etc; worth or the degree of worth 6. that which is desirable or worthy of esteem for its own sake; thing or quality having intrinsic worth."

Additionally, Section 55–10–02(1), N.D.C.C., further defines a historical site as a site possessing historical value of state or national significance. These definitions are in keeping with the purpose expressed in the legislative history for enacting Section 55–10–02(4), N.D.C.C.: to preserve the heritage of North Dakota.

The plain, ordinary, and commonly understood meaning of these words indicates that, at a minimum, historical value means something of intrinsic worth which provides evidence of state or national significance of what has happened in the life or development of a people or country. Additionally, the Board has promulgated N.D. Admin.Code § 40–02–01–03 (1982) which provides as follows:

"*40–02–01–03. Criteria for listing properties.* Copies of criteria established by the board for listing properties

in the registry are available on request from:

> Superintendent
> State Historical Society of North Dakota
> North Dakota Heritage Center
> Bismarck, North Dakota 58505"

The Board's criteria,[8] as an administrative construction, further amplify the commonly understood meaning of the term "historical value" and give additional substance to the term. Section 1-02-39(6), N.D.C.C.

We are not persuaded by the reasoning in *Texas Antiquities Committee, supra.* Initially, we note that only a plurality, four of nine justices, held that the term "buildings ... and locations of historical ... interest" was unconstitutionally vague. Second, the plurality held that phrase unconsti-

tutionally vague because it concluded there were no standard or criteria either by statute or rule which afforded safeguards for the affected parties.

In contrast, in this case, we conclude that the term "historical value", when considered within the context of the object and policy of our Chapter on "Preservation of Historic Sites and Antiquities;" the plain, ordinary, and commonly understood meaning of the phrase; and the Board's administrative construction, is a reasonably clear guideline and a sufficiently definite standard to pass constitutional muster. Minutely designated standards are not required. The plain, ordinary, and commonly understood meaning of the term "historical value" provides a sufficiently objective standard to advise ordinary and reasonable

---

**8.** Although not published in the administrative rules, the Board has established the following criteria for listing properties in the Registry:

"The State Historical Board shall consider historic and prehistoric sites, structures, buildings, objects, neighborhoods, networks, and cultural landscapes eligible for inclusion in the State Historic Sites Registry if it can be demonstrated that:

"A. they have been associated with and now illustrate, recall or characterize one or more of the following:
individuals
groups
events
processes
institutions
movements
lifeways
folkways
ideals
beliefs, or
other patterns or phenomena
that had a significant influence on or are important reflections of the prehistoric or historic development or identity of the state, or of a region, community, or cultural group within the State, *or*

"B. they are distinctive or they distinctively illustrate one or more of the following:
architectural styles
building types
types or methods of construction
vernacular, popular, or traditional building design
landscape architecture
urban design or planning
works of significant architects, designers, builders, or planners
monumental sculpture

industrial, technological, or engineering design, or other architectural, aesthetic, or engineering expressions
that characterize, are unique to, possess special artistic or aesthetic values for, or had an important influence on the historic or prehistoric community, or cultural group for which they were created, *or*

"C. they contain information about or evidence of one or more of the following historic or prehistoric
events
processes
institutions
design
construction
settlement
migration
ideals
beliefs
lifeways
folkways, or other facts of development and cultural systems
that are known or established likely to be important to professional or public knowledge or understanding of earlier cultures or cultural systems or of the development of the State or of regions or communities within the State, *and*

"D. they must possess integrity of form, material, and setting, *generally* retaining those historic characteristics such as
physical features
evidence of workmanship
fabric
location, and
surroundings
that convey, support, represent, or contain values and qualities for which they are judged significant."

people as to its meaning and to limit the Board's discretionary power to place sites on the Registry.

In this instance, we must also be cognizant that, as a State, North Dakota is not yet 100 years old, but this Courthouse is older, with undisputed characteristics which the Board found had "historical value." As was pointed out during oral argument in this Court, "If this isn't an historic building, what is in North Dakota?"

We conclude that the Legislature's delegation of power and authority to the Board to place sites on the Registry was not an unconstitutional delegation of its legislative power. That delegation necessarily encompasses the responsibility to determine what sites have historical value.

■■■■ Stutsman County contends that the Board's decision to place the Courthouse on the Registry is invalid because the Board did not follow its own rules and regulations in making its decision. On appeal from an administrative agency decision, the general rule is that the reviewing court will confine its review to those issues which were raised before the agency. *Skjonsby Truck Line, Inc. v. Elkin*, 325 N.W.2d 271 (N.D.1982); *Amoco Production Co. v. North Dakota Industrial Commission*, 307 N.W.2d 839 (N.D.1981). We have reviewed the procedural errors raised by Stutsman County, and we conclude that all but one of them were not appropriately raised in the proceedings before the Board.

The issue which was raised relates to whether or not the nomination notification was required to state that once a site was placed on the Registry, it could not be removed. Stutsman County contends that because the nomination notification did not state that the Courthouse could not be removed from the Registry, the notification did not include a "concise statement of the legal implications of state historic sites registry listing." N.D.Admin.Code § 40–02–

01–05(2)(g) (1982). Stutsman County contends that the Board's decision to place the Courthouse on the Registry is therefore invalid because the Board did not follow N.D.Admin.Code § 40–02–01–05 which provides that the Board will not review nominations unless the notification procedures have been followed. The Board responds that the notification did set out the major legal implication that, "If the board approves the nomination for listing in the State Historic Sites Registry, any plan subsequently proposed by the state, its department and agencies, the city, county, school district or other body corporate and politic for altering the property will require approval from the Superintendent of the State Historical Board before such plans are implemented." We need not decide this issue because the 1985 Legislature amended Section 55–10–02(4), N.D.C.C., (1985 N.D.Sess.Laws, Ch. 594), effective July 1, 1985, to provide statutory authorization for removal of sites from the Registry (see footnote 3).

Stutsman County also contends that its constitutional rights[9] have been violated by placing the Courthouse on the Registry. Stutsman County contends that the Board has, in effect, without condemnation taken the property of the taxpayers of Stutsman County.

■■■■ Stutsman County is the owner of the Courthouse. Section 55–10–08(2), N.D.C.C., provides that neither the state, its departments and agencies, each city, county, school district, and other body corporate and politic may alter the physical features or historic character of any site listed in the Registry. In North Dakota, counties are creatures of the constitution and may speak and act only in the manner and on the matters prescribed by the Legislature in statutes enacted pursuant to constitutional authority. *Dornacker v. Olson*, 248 N.W.2d 844 (N.D.1976). Our North Dakota

---

**9.** Stutsman County contends that the following provisions of the North Dakota Constitution have been violated: Article I, Section 1; Article I, Section 12; Article I, Section 16; Article I, Section 21; Article IV, Section 43; Article X, Section 1; Article X, Section 5; Article X, Section 18. Stutsman County also contends that the Fifth and Fourteenth Amendments of the United States Constitution have been violated.

Constitution, Article VII, Section 2 provides:

"*Section 2.* The legislative assembly shall provide by law for the establishment and the government of all political subdivisions. Each political subdivision shall have and exercise such powers as provided by law."

■ A political subdivision, as an agency of the state in the exercise of governmental powers, generally has no privileges or immunities under the Federal Constitution which it may invoke in opposition to the will of the State. See *Williams v. Mayor and City Council of Baltimore,* 289 U.S. 36, 53 S.Ct. 431, 77 L.Ed. 1015 (1933); *City of Trenton v. State of New Jersey,* 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937 (1923); *Hunter v. City of Pittsburgh,* 207 U.S. 161, 28 S.Ct. 40, 52 L.Ed. 151 (1907). See also 56 Am.Jur.2d Municipal Corporations, Counties, and Other Political Subdivisions, § 99 [municipal corporations have no rights, privileges, or immunities within the protection of the usual constitutional guarantees as against legislative control].

■ In this instance the County, rather than a private person, is the party asserting a violation of its constitutional rights. Stutsman County may not successfully assert a violation of those constitutional rights because it is not a person or private party within the context of those provisions.[10] If Stutsman County has a serious complaint about the burdens placed upon it by this designation under the legislative enactment of Chapter 55–10 for preservation of historic sites, the County must take it to the Legislature which controls the County's fate in matters such as this.

---

**10.** *Penn Central Transp. Co. v. City of New York,* 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), held that application of New York City's Landmarks Preservation Law to private property did not constitute a taking under the Fifth Amendment made applicable to the states by the Fourteenth Amendment, where the City's carefully worded zoning laws prevented use of the air space above Grand Central Terminal after the Landmarks Preservation Commission designated it as a "Landmark" having "a special char-

Accordingly, we reverse the district court judgment and affirm the Board's decision to place the Courthouse on the Registry.

ERICKSTAD, C.J., and LEVINE, VANDE WALLE and GIERKE, JJ., concur.

acter or special historical or aesthetic interest or value as part of the development, heritage or cultural characteristics of the city, state or nation." The majority opinion observes:

"Over the past 50 years, all 50 States and over 500 municipalities have enacted laws to encourage or require the preservation of buildings and areas with historic or aesthetic importance." 438 U.S. at 107, 98 S.Ct. at 2651.