PHILLIPS NATURAL GAS COMPANY,
Plaintiff, Appellant and Cross-Appellee,

v.

The STATE of North Dakota, acting By
and Through the STATE BOARD OF
EQUALIZATION, and the County of
Williams, Defendants, Appellees and
Cross-Appellants.

PHILLIPS NATURAL GAS COMPANY,
Plaintiff, Appellant and Cross-Appellee,

v.

The STATE of North Dakota, acting By
and Through the STATE BOARD OF
EQUALIZATION, and the Counties of
Williams, McKenzie and Divide, De-
fendants, Appellees and Cross-Appel-
lants.

MATADOR PIPELINES, INC., Plaintiff,
Appellant and Cross-Appellee,

v.

The STATE of North Dakota, acting By
and Through the STATE BOARD OF
EQUALIZATION, and the Counties of
Billings, Dunn, Slope and Stark, De-
fendants, Appellees and Cross-Appel-
lants.

OKIE PIPE LINE COMPANY,
Plaintiff, Appellant and
Cross-Appellee,

v.

The STATE of North Dakota, acting By
and Through the STATE BOARD OF
EQUALIZATION, and the Counties of
Bowman, McKenzie and Williams, De-
fendants, Appellees and Cross-Appel-
lants.

KOCH HYDROCARBON COMPANY,
Plaintiff, Appellant and
Cross-Appellee,

v.

The STATE of North Dakota, acting By
and Through the STATE BOARD OF
EQUALIZATION, and the Counties of
Billings, Golden Valley and McKenzie,

Defendants, Appellees and Cross-Appel-
lants.

Civ. Nos. 11288 through 11292.

Supreme Court of North Dakota.

March 26, 1987.

Pearce & Durick, Bismarck, for appellant
Phillips Natural Gas Company; argued by
William P. Pearce.

Wheeler, Wolf, Peterson, Schmitz, McDonald & Johnson, Bismarck, for appellants Matador Pipelines, Inc., Okie Pipe Line Company and Koch Hydrocarbon Company; argued by R.W. Wheeler.

Robert W. Wirtz, Asst. Atty. Gen., State Tax Department, Bismarck, for appellees.

Fleck, Mather, Strutz & Mayer, Bismarck, for amicus curiae, Rocky Mountain Oil & Gas Association. Submitted on brief.

MESCHKE, Justice.

These appeals and the cross-appeal raise questions about the taxability and assessment of pipelines which transport crude oil or natural gas. The trial court determined that the plaintiffs' pipelines were not subject to assessment by the State Board of Equalization but constituted real property subject to local assessment. The plaintiffs appealed and the State Board of Equalization and the other defendants cross-appealed. We conclude that plaintiffs' pipelines are subject to central assessment by the State Board of Equalization. Accordingly, we reverse and remand.

Pursuant to Chapter 57–08, N.D.C.C., "Review of Public Utility Assessments," each of the plaintiffs, as an owner and operator of a pipeline passing through several counties in this state and used for the transportation of crude oil or natural gas, sued to recover ad valorem taxes levied upon its pipeline pursuant to assessment by the State Board of Equalization. The cases were consolidated and were submitted on a stipulation of facts in which all parties joined. The judgment provides:

"1. That the Plaintiffs are not common pipeline carriers as defined by N.D. C.C. § 49–19–01;

"2. That the Plaintiffs' respective pipeline property is not subject to central ad valorem assessment by the State Board of Equalization pursuant to the provisions of Art. X, § 4, N.D. Const. and N.D.C.C. Chapter 57–06;

"3. That the protested tax payments be refunded consistent with paragraph 2;

"4. That, in addition to the estate in real estate held by each respective Plaintiff, the Plaintiffs' respective pipeline property is real property subject to local ad valorem assessment; ..."

The issues on these appeals from that judgment are (1) whether the pipelines are subject to central assessment by the State Board of Equalization, and (2) if not subject to central assessment, do pipelines constitute real property subject to local assessment or personal property exempt from taxation.

"All property in this state is subject to taxation unless expressly exempted by law." Section 57–02–03, N.D.C.C. "Taxation is the rule; freedom from taxation is the exception." *Tyler v. Cass County,* 1 N.D. 369, 382, 48 N.W. 232, 233 (1890). With two exceptions not relevant here, § 57–02–08(25), N.D.C.C., exempts from taxation all personal property not required by Art. X, § 4, N.D. Const., to be assessed by the State Board of Equalization.

Article X, § 4, N.D. Const., provides:

"All taxable property except as hereinafter in this section provided, shall be assessed in the county, city, township, village or district in which it is situated, in the manner prescribed by law. The property, including franchises of all railroads operated in this state, and of all express companies, freight line companies, dining car companies, sleeping car companies, car equipment companies, or private car line companies, telegraph or telephone companies, the property of any person, firm or corporation used for the purpose of furnishing electric light, heat or power, or in distributing the same for public use, and *the property of any other corporation, firm or individual now or hereafter operating in this state, and used directly or indirectly in the carrying of persons, property or messages, shall be assessed by the state board of equalization* in a manner prescribed by such state board or commission as may be provided by law. But

should any railroad allow any portion of its railway to be used for any purpose other than the operation of a railroad thereon, such portion of its railway, while so used shall be assessed in a manner provided for the assessment of other real property." (Emphasis added.)

Relevant sections of Chapter 57–06, N.D. C.C., provide:

"*57–06–01. Public utilities subject to provisions of chapter.* The provisions of this chapter shall govern the assessment of the property of any public utility company defined in section 57–06–02, and of any other company used directly or indirectly in carrying or conveying persons, property, or messages, unless the operative property is subject to a lieu tax in place of a general property tax...."

"*57–06–02. Definitions.* As used in this chapter, unless the context and subject matter otherwise clearly require:

\* \* \* \* \* \*

"2. 'Gas company' means a company owning, holding, or operating under lease or otherwise, any property in this state for the purpose of furnishing gas, or distributing the same, for public use, by means of pipelines.

"3. 'Pipeline company' means a company owning, holding, or operating under a lease or otherwise, any property in this state for the purpose of transporting crude oil, natural gas, processed gas, manufactured gas, refined petroleum products, or coal and related products for public use."

"*57–06–03. 'Operative property' defined.* The term 'operative property' means any and all property reasonably necessary for use by any company mentioned in section 57–06–02 exclusively in the operation and conduct of the particular kind of business engaged in by it...."

"*57–06–05. Annual assessment.* The state board of equalization, at its annual meeting in August, shall assess the franchises and all operative property of telephone, telegraph, power, gas, pipeline, and other companies, covered by this chapter, with reference to the value thereof on the first day of January of that year."

Section 57–06–14, N.D.C.C., provides the manner in which the operative property is to be assessed.

Matador, Okie, and Koch assert that, under the principle of ejusdem generis, the application of Article X, § 4, is limited to public utilities. Phillips asserts that "the language in Article X, § 4 describing property used 'in the carrying of persons, property or messages', means for public use or for hire, as in the case of a public utility or common carrier." In sum, the plaintiffs contend that the pipelines are not public utilities or for public use and therefore are not subject to central assessment by the State Board. The trial court determined that the constitutional provision was applicable only to public utilities.

The State Board of Equalization contends that the plaintiffs' pipelines are subject to assessment by it because the plaintiffs are public utilities under Ch. 57–06, N.D.C.C., or, even if not utilities, their property is still subject to assessment by the State Board under Art. X, § 4, N.D. Const., and Ch. 57–06, N.D.C.C. It asserts:

"It is the position of the State Board that article X, § 4 North Dakota Constitution, confers assessment jurisdiction upon the State Board with respect to the property of the various companies enumerated therein, which are normally classified as 'public utilities' under the North Dakota law and further grants similar jurisdiction to the State Board with respect to the property of any other company even though the company is not a public utility if the property of that company is used within this state directly or indirectly in the carrying of persons, property, or messages.

"Likewise, it is the position of the State Board that in enacting N.D.C.C. chapter 57–06 the legislative assembly did not intend to limit the State Board's jurisdiction to the assessment of public utility property but rather intended that, in addition to public utility property, any

other similar property used directly or indirectly in carrying or conveying property would also be assessed by the State Board, even though that property is not owned by a public utility."

Article X, § 4, N.D. Const., was originally adopted as Art. XI, § 179, and provided for central assessment of railroad property, with the assessed valuation to be apportioned to local taxing districts in proportion to the number of miles of railway laid in them. The provision was amended in 1900 to add several specific kinds of transportation property and the words "or corporations operated in this state and used directly or indirectly in the carrying of persons, property or messages," to be assessed by the State Board of Equalization. The 1900 amendment also changed "miles of railway" to "miles of such property" as the basis for apportioning assessed valuation to the local taxing districts. The section was amended in 1914 to add "private car line companies" to the properties to be assessed by the State Board, delete the provision relating to apportionment of assessed valuation based on mileage, and provide for assessment "in a manner prescribed by such state board or commission as may be provided by law." The section was amended in 1928 to add "the property of any person, firm or corporation used for the purpose of furnishing electric light, heat or power, or in distributing the same for public use" to the properties to be assessed by the State Board. To the property of corporations used in the carrying of persons, property or messages to be assessed by the State Board, the 1928 amendment also added "and the property of any other ..., firm or individual now or hereafter" used in the carrying of persons, property or messages.

 This history of amendment leads us to view the 1900 and 1928 amendments as authorizing central assessment of all other linear transportation property not specifically named. To restrict the authorizations of the section to the property of public utilities would render the words, "and the property of any other corporation,

firm or individual now or hereafter operating in this state, and used directly or indirectly in the carrying of persons, property or messages," meaningless surplusage. See *County of Stutsman v. State Historical Society*, 371 N.W.2d 321, 325 (N.D. 1985). We therefore conclude that the pipeline systems operated by the plaintiffs fall within the phrase, "and the property of any other corporation, firm or individual now or hereafter operating in this state, and used directly or indirectly in the carrying of persons, property or messages." In our view, Article X, § 4, N.D. Const., authorizes assessment by the State Board of Equalization of each property constituting a linear transportation system which ordinarily extends through more than one geographic taxing district. The assessment may be "in a manner prescribed by such state board or commission as may be provided by law."

Matador, Okie, and Koch assert:

"The State Board also argues that the legislative assembly intended central assessment of more than public utility property. If used in carrying property, it would be centrally assessed. Supermarket carts, wheelbarrows, brief cases, perhaps?"

Phillips asserts:

"If this power extended to *all* carrying or conveying of persons, property or messages then the Board's jurisdiction under § 57–06–01 would be impossibly broad. It would be required to assess trucking companies; taxicab companies; all company-owned motor vehicles, boats, aircraft and even bicycles used privately for company or personal purposes; company-owned intercoms, telecopiers, and any other electronic message-handling equipment; etc."

We need not decide whether Art. X, § 4, N.D. Const., reaches as far as these assertions suggest. We observe, however, that the section is not without limits. We have concluded that it authorizes central assessment of linear transportation systems ordinarily extending through multiple geographic taxing districts. As this court said

in *State v. Wetz,* 40 N.D. 299, 311, 168 N.W. 835, 839 (1918), the assessment power granted to the State Board:

"... was doubtless conferred upon a central board in order to obviate conflicts between local taxing authorities, each taxing portions of the same property. It will be noted that the properties affected are those which generally extend into and through a large number of taxing districts. In the light of this fact, it was thought that the best means of securing uniform valuation and of avoiding complications incident to the attempted exercise of authority by numerous local units was through the medium of a central assessment. We do not doubt that this affords the strongest, if not the sole, reason for the adoption of section 179."

In addition, we observe that Art. X, § 4 originally based apportionment on mileage, which Chapter 57–06, N.D.C.C., retains. Chapter 57–06, N.D.C.C., contains such limiting references as "system," "line," "length of the line," (§ 57–06–06, N.D.C.C.); "lines," "interconnected, or continuous system," "system," "mileage," "miles," (§ 57–06–14, N.D.C.C.); "line of property," "value per mile," "a single and continuous property," "a pro rata distribution per mile [1.61 kilometers] of the assessment of the several lines," (§ 57–06–17, N.D.C.C.); "valuation per mile," (§ 57–06–19, N.D.C.C.); and "length of its lines," (§ 57–06–21, N.D.C.C.). In light of the limitations implicit in these references, it is difficult to imagine how such things as "[s]upermarket carts" and "bicycles used privately" would be subject to assessment by the State Board of Equalization.

In implementing Article X, § 4, N.D. Const., the Legislature enacted S.L.1931, Ch. 291, which is now codified as Ch. 57–06, N.D.C.C. Section 1 of Chapter 291 contained ten subsections. Subsection 1 of § 1 stated the name of the act. Subsections 2 through 8 defined company, express company, sleeping car company, telephone company, telegraph company, power company, and gas company. Subsection 9 of § 1 provided:

"Public Utilities Not Enumerated—Exceptions. The provisions of this act shall be applicable to and shall govern the assessment of the property of any other company used directly or indirectly in the carrying or conveying of persons, property or messages, except in cases where the said operative property is subject to a lieu tax in place of the general property tax, and except railway and street railway property."

Subsection 10 of § 1 provided that "[t]he term 'operative property' means any and all property reasonably necessary for use by said companies exclusively in the operation and conduct of the particular kinds of business enumerated herein."

In codifying S.L.1931, Ch. 291, in the North Dakota Revised Code of 1943, the code revision commission placed the "any other company" provision in § 57–0601, R.C. 1943 (now § 57–06–01, N.D.C.C.), placed definitions of company, sleeping car company, telephone company, telegraph company, power company, and gas company in § 57–0602, R.C. 1943 (now § 57–06–02, N.D.C.C.), and in defining operative property in § 57–0603, R.C. 1943 (now § 57–06–03, N.D.C.C.), used the words "by any company mentioned in section 57–0602" instead of the words "by said companies" used in subsection 10 of § 1, S.L. 1931, Ch. 291.

The Reviser's Note to § 57–0601, R.C. 1943, states that § 57–0601 "is a combination of subs. 9 of s. 1 and of s. 16 [S.L.1931, Ch. 291], revised for clarity without change in meaning." Of § 57–0603, R.C. 1943, the Reviser's Note states: "No change except to segregate this as a separate section for clarity and convenience." Reference in § 57–0603, R.C. 1943, to § 57–0601 as well as to 57–0602 would more clearly have expressed the Legislature's intent to cover all other companies, as well as those specifically defined. That intent was clearly shown in the legislative enactment and was not changed or intended to be changed by the codification.

Legislative history of Chapter 57–06 after 1943 does not change its import. A

1965 amendment of § 57–06–02, N.D.C.C., inserted a definition of pipeline companies operating property transporting products "for public use." S.L.1965, Ch. 390, § 1. We do not, however, read that amendment as excluding coverage of companies transporting products not for public use in § 57–06–01. No legislative history explains why the Legislature added the pipeline definition to § 57–06–02, although it may have been brought about by the 1943 code revision commission's inadvertent under-inclusive reference to § 57–0602, R.C. 1943, in § 57–0603, R.C. 1943. In any event, we see no irreconcilable conflict between that particularized definition in § 57–06–02, N.D.C.C., and the general language in § 57–06–01, N.D.C.C., so as to exclude central assessment of pipelines transporting products not for public use. See § 1–02–07, N.D.C.C. See also, § 57–06–05, N.D.C.C. (the State Board shall assess specified companies, all of which are defined in § 57–06–02, N.D.C.C., and "other companies, covered by this chapter."). Significantly, the Legislature, in enacting the definition of pipeline companies in 1965, did not amend the general "any other company" language in § 57–06–01, N.D.C.C. Thus, we find no indication that the Legislature intended to narrow the previous application of Ch. 57–06, N.D.C.C.

Again, "we are guided by the common-sense principle that a statute is to be read to give effect to each of its provisions, whenever fairly possible." *County of Stutsman v. State Historical Society, supra,* 371 N.W.2d at 325. Thus, we conclude that, in implementing the constitutional authorization in Art. X, § 4, the Legislature has authorized central assessment of plaintiffs' pipelines by the State Board of Equalization.

Phillips has drawn our attention to a pipeline that the State Board does not assess and asserts that the State Board's differing treatment of that pipeline and Phillips' pipeline is arbitrary and violates Phillips' rights under the Federal Constitution and the North Dakota Constitution. We have not, however, been provided with sufficient information to determine whether there are or are not reasonable grounds for distinguishing between the pipelines. Therefore, we do not address this contention.

For the reasons stated, we conclude that the plaintiffs' pipelines are subject to central assessment by the State Board of Equalization, reverse the judgment, and remand for entry of judgment in accordance with this opinion.

ERICKSTAD, C.J., and LEVINE and GIERKE, JJ., concur.

VANDE WALLE, Justice, concurring in the result.

I concur in the result reached by the majority opinion. Although I believe the conclusion that Article X, Section 4, of the North Dakota Constitution "applies to linear transportation systems ordinarily extending through multiple geographic taxing districts" is logical, it adds a limitation not specifically contained in the wording of that constitutional provision. Of course, without such a limitation the arguments of Matador, Okie, and Koch that the provision would apply to supermarket carts and wheelbarrows and more significantly the argument of Phillips that it would apply to trucking companies, taxicab companies, and electronic message-handling equipment become much more significant, for the provision indeed appears to sweep with a broad brush if it is not limited in some manner such as to public utilities.

I agree that the decision in *State v. Wetz,* 40 N.D. 299, 168 N.W. 835 (1918), supports the construction placed upon the constitutional provision by the majority opinion. It appears to me, however, that such interpretations are more properly accomplished by the legislative branch of government which, as this court has observed, is granted the discretion and authority to classify various subjects, including property and persons, for tax purposes, subject only to the limitation that such classification must not be arbitrary or discriminatory. See, e.g., *Signal Oil and Gas Company v.*

*Williams County,* 206 N.W.2d 75 (N.D. 1973).

Although, as noted above, I believe the construction placed upon Article X, Section 4, of the North Dakota Constitution is a reasonable one which the Legislature might enact by statute, I do not believe it is the only permissible construction. I do not know what factual situations might arise in which the Legislature, in enacting statutory provisions to implement the constitutional provision, might find such a definition too limiting. I therefore concur in the result reached by the majority opinion with the understanding that the definition of Article X, Section 4, North Dakota Constitution, to apply to "linear transportation systems ordinarily extending through multiple geographic taxing districts" is not a limitation upon the Legislature.