MCI TELECOMMUNICATIONS CORPO-
RATION and MidAmerican Communica-
tions, d/b/a LDDS Communications,
Plaintiffs and Appellants,

v.

M.K. HEITKAMP, North Dakota
Attorney General, Defendant
and Appellee,

and

US WEST Communications, Inc., and
BEK Communications Cooperative,
Consolidated Telephone Cooperative,
Dakota Central Telecommunications
Cooperative, Dickey Rural Telephone
Cooperative, Inter–Community Tele-
phone Company, Midstate Telephone
Company, Northwest Communications
Cooperative, Polar Communications
Mutual Aid Corp., Red River Rural Tele-
phone Association, Reservation Tele-
phone Cooperative, Souris River Tele-
communications Cooperative, United
Telephone Mutual Aid Corporation, and
West River Telecommunications Cooper-
ative, Intervenors and Appellees.

Civ. No. 940100.

Supreme Court of North Dakota.

Nov. 2, 1994.

John W. Morrison (argued), of Fleck, Mather & Strutz, Bismarck, for plaintiffs and appellants.

Douglas Alan Bahr (argued), Asst. Atty. Gen., Atty. General's Office, Bismarck, for defendant and appellee.

Daniel S. Kuntz (argued), of Zuger Kirmis & Smith, Bismarck, for intervenor and appellee US WEST Communications, Inc.

Jan M. Sebby (argued), of Pringle & Herigstad, P.C., Minot, for intervenors and appellees Independent Telephone Companies.

NEUMANN, Justice.

MCI Telecommunications Corporation [MCI] and Mid American Communications, d/b/a LDDS Communications [LDDS], ap-

pealed a district court judgment dismissing their action against M.K. Heidi Heitkamp, North Dakota Attorney General [Attorney General], for a declaratory judgment that Senate Bill 2385, passed by the 1993 Legislature, violates the North Dakota Constitution. The challenged statute declares that, through July 31, 1999, companies providing local telephone exchange service may not be required to provide intraLATA dialing parity, without access codes, to long distance telecommunications companies that do not provide local exchange service. We conclude that the statute is constitutional, and we affirm the judgment of dismissal.

This case involves the handling of telecommunications services within a "LATA"[1] created by a consent decree entered in antitrust litigation. In 1949, the United States brought an antitrust action against Western Electric Company, Inc., and American Telephone and Telegraph Company, Inc. [AT & T], seeking AT & T's divestiture of Western Electric, a wholly-owned subsidiary that manufactured telecommunications equipment. *United States v. American Tel. & Tel. Co.,* 552 F.Supp. 131 (D.D.C.1982). A judgment granting relief substantially different than had been sought was issued in 1956. *Id.* at 138. In 1974, the United States filed another antitrust action against AT & T, Western Electric, and Bell Telephone Laboratories, Inc., seeking AT & T's divestiture of the Bell Operating Companies and the divestiture and dissolution of Western Electric. *Id.* at 139. This led to a judgment vacating the 1956 judgment and requiring the submission of a plan of reorganization. *Id.* at 226. In *United States v. Western Elec. Co., Inc.,* 569 F.Supp. 990 (D.D.C.1983), the court approved much of the proposed plan of reorganization, including a large number of LATAs. The court explained the LATA concept incorporated in the AT & T reorganization:

> "Pursuant to the decree, all Bell territory in the continental United States is divided into LATAs, generally centering upon a city or other identifiable community of interest. Most simply, a LATA marks the boundaries beyond which a Bell Operating Company [after divestiture from AT & T] may not carry telephone calls. What the Operating Companies [22, controlled by seven regional holding companies after the divestiture] will do in the service field after divestiture is (1) to engage in exchange telecommunications, that is, to transport traffic between telephones located within a LATA, and (2) to provide exchange access within a LATA, that is, to link a subscriber's telephone to the nearest transmission facility of AT & T or one of AT & T's longhaul competitors.

> "Once the divestiture is completed, the Operating Companies will be allowed to transport communications only to and from telephones and other apparatuses located within the same LATA (intra-LATA traffic); because of their local monopoly position, the decree does not permit the Operating Companies to carry calls between different LATAS (inter-LATA traffic). Only AT & T and its intercity competitors [also known as interexchange carriers, inter-LATA carriers, or other common carriers (OCCs) ]—such as MCI, Sprint, and Satellite Business Systems—may carry telecommunications traffic which originates in one LATA and terminates in another."

*Id.* at 993–94.

With regard to interLATA exchange service, the consent decree required the divested Bell Operating Companies to provide equal dialing access, without access codes, to all interexchange carriers:

> "(ii) Each BOC shall, in accordance with the schedule set out in paragraph (1), offer as a tariffed service exchange access that permits each subscriber automatically to route, without the use of access codes, all the subscriber's interexchange communications to the interexchange carrier of the customer's designation."

*United States v. American Tel. & Tel. Co., supra,* 552 F.Supp. at 233 [App. B(A)(2)(ii) ]. With regard to intraLATA toll calls the court allowed a dialing disparity between the Operating Companies and interexchange carriers such as AT & T, MCI, Sprint, and others:

---

**1.** "The acronym 'LATA' stands for 'Local Access and Transport Area.'" *United States v. Western* *Elec. Co., Inc.,* 569 F.Supp. 990, 993 n. 9 (D.D.C. 1983).

"... if a subscriber wishes to place an intra-LATA call through AT & T, MCI, Sprint, Microtel, or one of the other competitive services, he will have to add four digits at the time of calling (*i.e.*, an access code of '10XX'). If an access code is not dialed, the intra-LATA call will automatically be carried by the Operating Company."

*United States v. Western Elec. Co., Inc.*, 569 F.Supp. 1057, 1108 (D.D.C.1983). The court left the matter of intraLATA access codes up to state regulators. *Id.* at 1109.

Those events in the telecommunications industry at the national level were followed by regulatory changes at the state level. In 1989 the Legislature passed Senate Bill No. 2320 (S.L.1989, ch. 566, § 14), which amended § 49–21–07, N.D.C.C., to provide in part:

"It shall be unlawful for any telecommunications company to make *any unjust or unreasonable discrimination in prices, practices, or service for or in connection with like telecommunications service,* or give any undue or unreasonable preference or advantage to any person *or telecommunications company* or to subject any person *or telecommunications company* to any undue or unreasonable prejudice or disadvantage in the service rendered by it to the public *or to a telecommunications company,* or to charge or receive for any such service rendered, more or less than the *prices* provided for in the schedules then on file with the commission."

In 1989, the Public Service Commission opened an investigation into the effects of S.B. 2320. On April 7, 1992, the PSC issued findings of fact, conclusions of law, and an order. The PSC found, among other things, that "[a]s a first and most important step to realizing the benefits of competition, we believe that both intraLATA 1–plus equal access and interLATA 1–plus equal access should be implemented in North Dakota rapidly," and that "10XXX dialing access is not equal to 1+ access." The PSC concluded, in part:

"11. Equal access would further the development of competitive markets without unreasonably distracting from the efficient provision of telecommunications services and would make available to all people of North Dakota modern and efficient telecommunications at the most economic and reasonable cost.

\* \* \* \* \* \*

"14. Until an end office is converted to offer intraLATA equal access, a local exchange company is providing interexchange carriers other than AT & T an inferior access for interLATA [sic] traffic. The price of inferior intraLATA access should be less than the price for superior, or premium, access."

The PSC ordered, among other things: "IntraLATA 1–plus equal access and interLATA 1–plus equal access shall be implemented in North Dakota as rapidly as feasible." Upon appeal, the district court concluded that the PSC had not complied with the rulemaking provisions of Ch. 28–32, N.D.C.C., reversed, and remanded for further proceedings.

Before further proceedings were held, the 1993 Legislative Assembly adopted S.B. 2385 (S.L. 1993, ch. 470), which, "effective through July 31, 1999," provides:

"In order to continue to make available to all people of this state modern and efficient telecommunications services at the most economic and reasonable cost, the provisioning of dialing parity on an intraLATA basis, otherwise known as 1+ intraLATA equal access, may not be required to be provided by any company providing local exchange service."

MCI and LDDS sued the Attorney General for a declaratory judgment that 1993 S.B. 2385 violates Art. I, § 22, N.D. Const., Art. IV, § 13, N.D. Const., and unconstitutionally delegates legislative powers to private entities in violation of Art. IV, N.D. Const. U.S. West Communications, Inc. and a group of 13 independent telephone companies [ITCG] were allowed to intervene. The trial court granted the Attorney General's motion for summary judgment and a judgment of dismissal was entered.

On appeal, MCI and LDDS contend that S.B. 2385(1) violates Art. I, § 22, N.D.

Const.;[2] (2) violates Art. IV, § 13, N.D. Const.; and (3) constitutes an unlawful delegation of legislative authority to private entities.

■ MCI and LDDS contend that S.B. 2385 violates Article IV, § 13, N.D. Const., "because it constitutes a 'special law' designed to protect US WEST's deregulated monopoly over intraLATA long distance telephone calls." Article IV, § 13, N.D. Const., provides in pertinent part:

"The legislative assembly shall enact all laws necessary to carry into effect the provisions of this constitution. Except as otherwise provided in this constitution, no local or special laws may be enacted, nor may the legislative assembly indirectly enact special or local laws by the partial repeal of a general law but laws repealing local or special laws may be enacted."

■ This court recently reiterated a number of premises underlying analysis of constitutional challenges to statutes:

" '[A]n act of the legislature is presumed to be correct and valid, and any doubt as to its constitutionality must, where possible, be resolved in favor of its validity.' *Southern Valley Grain Dealers Ass'n v. Board of County Comm'rs,* 257 N.W.2d 425, 434 (N.D.1977). 'A statute enjoys a conclusive presumption of constitutionality unless it is clearly shown that it contravenes the state or federal constitution.' *Richter v. Jones,* 378 N.W.2d 209, 211 (N.D.1985). ' "The justice, wisdom, necessity, utility and expediency of legislation are questions for legislative, and not for judicial determination." ' *Manikowske v. North Dakota Workmen's Compensation Bureau,* 338 N.W.2d 823, 825 (N.D.1983), *quoting Asbury Hospital v. Cass County,* 72 N.D. 359, 7 N.W.2d 438, 442 Syllabus ¶ 11 (1943)."

*Haney v. North Dakota Workers Compensation Bureau,* 518 N.W.2d 195, 197 (N.D. 1994). "The power to hold an Act of the Legislature invalid is one of the highest functions of the courts, and such power should be exercised with great restraint." *Montana–Dakota Utilities Co. v. Johanneson,* 153 N.W.2d 414, 416–17 Syllabus ¶ 6 (N.D.1967). The presumption of constitutionality is so strong that a statute will not be declared unconstitutional "unless its invalidity is, in the judgment of the court, beyond a reasonable doubt." *Menz v. Coyle,* 117 N.W.2d 290, 293 Syllabus ¶ 3 (N.D.1962). The policy of upholding the constitutionality of a statute whenever possible is so strong that our state constitution provides that this court "shall not declare a legislative enactment unconstitutional unless at least four of the members of the court so decide." Article VI, § 4, N.D. Const.

■ " 'A statute relating to persons or things as a class is a general law; one relating to particular persons or things of a class is special.' " *Vermont Loan & Trust Co. v. Whithed,* 2 N.D. 82, 92–3, 49 N.W. 318, 320 (1891) (quoting Sutherland's Statutory Construction § 121). Special laws are made for individual cases of less than a class, due to peculiar conditions and circumstances. *Id.* We have recently said that the special laws language of our state constitution constrains laws relating " 'only to particular persons or things of a class, as distinguished from a "general law," which applies to all things or persons of a class.' " *Best Products Co., Inc. v. Spaeth,* 461 N.W.2d 91, 99 (N.D.1990) quoting *State v. First State Bank,* 52 N.D. 231, 202 N.W. 391, 399 (1924). A statute is not special, but general, if " '[i]t operates equally upon all persons and things within the scope of the statute. It operates alike on all persons and property similarly situated.... In other words, it operates alike in all cases where the facts are substantially the same.' " *Bellemare v. Gateway Builders, Inc.,* 420 N.W.2d 733, 739 (N.D.1988), quoting *State v. First State Bank,* 52 N.D. 231, 202 N.W. 391, 399 (1924).

■ On its face, S.B. 2385 appears to be a general law, applying, as it does, to all com-

---

2. Article I, § 22, N.D. Const., provides: "All laws of a general nature shall have a uniform operation." Although MCI and LDDS raised violation of Art. I, § 22, as an issue, they did not brief or argue it. Thus, that issue is deemed abandoned. *Osterman–Levitt v. MedQuest, Inc.,* 513 N.W.2d 70 (N.D.1994).

panies[3] "providing local exchange service," which are similarly situated to each other but are not similarly situated with interexchange long distance telecommunications companies which do not provide local exchange service. MCI and LDDS contend, however, that S.B. 2385 imposes an unconstitutionally disparate impact[4] on other intraLATA long distance carriers:

> "The plaintiffs contend that Senate Bill No. 2385 is in essence a special law treating local exchange companies, i.e., US WEST, different from all other telecommunication carriers in an intraLATA market. It does not apply uniformly to all similarly situated.
>
> \*     \*     \*     \*     \*     \*
>
> "In application to the telecommunications industry, Senate Bill 2385 provides US WEST with a continued monopoly on all intraLATA calling. This section effectively denies access in US WEST's service territory to other long distance telecommunication carriers, such as MCI and LDDS, because in order to access other carriers, consumers must dial a particular five digit access code before dialing the long distance number. Other long distance carriers are not totally excluded from carrying intraLATA calls because consumers can access other carriers by dialing '10XXX.' Such '10XXX' access is inferior access. It requires consumers to memorize and dial four extra digits."

We are met at the outset of our analysis of this issue with a dispute as to the proper test to apply. MCI and LDDS contend that a "reasonableness," but not a "rational basis," test applies. US WEST contends that a reasonableness test applies, but that it and

the rational basis test are essentially the same. The Attorney General contends that the appropriate test is "whether there is a reasonable basis for the statute." The ITCG contends that the rational basis test of equal protection analysis applies. For the purposes of this appeal we need not decide which of the tests is to be applied for special law challenges. Senate Bill 2385 passes constitutional muster under the special laws provision using either test.

■■■ Reasonable classification does not violate the special laws provision of the North Dakota Constitution. *Bellemare v. Gateway Builders, Inc., supra.* When we examine a statute to decide if a classification used is impermissibly particular, that is, special, rather than general, we examine the reasonableness of the classification. *Best Products Co., Inc. v. Spaeth, supra.* In other words, the test of the constitutionality of a statutory classification under the special laws provision of the North Dakota Constitution is the reasonableness of the classification. A "statutory classification challenged under the special laws provision of our constitution is . . . to be upheld if it 'is natural, not arbitrary, and standing upon some reason having regard to the character of the legislation of which it is a feature.' " *Id.,* 461 N.W.2d at 99, quoting *Miller v. Norton,* 22 N.D. 196, 132 N.W. 1080, 1091 (1911).

A company providing local exchange service is different from a company providing only long distance service. "It may appropriately be generalized that local telephone service is relatively more relied upon by individuals and that long distance is more business-oriented." *United States v. Western*

---

3. US WEST is but one of 23 local exchange telecommunications companies in North Dakota, and S.B. 2385 applies to all of them with regard to the access service they provide to interexchange long distance telecommunications companies.

4. The fact that an otherwise valid statute may have a harshly disparate impact on some, but not all, persons does not invalidate the statute. *See, e.g., State v. Knoefler,* 279 N.W.2d 658 (N.D. 1979), which involved a statute providing in part: "No new commercial location may be established within two miles of another commercial location. No commercial operator may establish

an apiary within two miles of another commercial operator." *Id.* at 659 n. 1. The statute withstood constitutional attack even though it had a much harsher impact on new beekeepers than on established beekeepers. The statute withstood a special law attack because "[i]t operates equally upon all commercial beekeepers and on all lands within the scope of the statute. It operates alike on all persons and property similarly situated." *Id.* at 661. The statute withstood an equal protection challenge because "[t]he spacing requirements of § 4–12–03.1 are rationally related to statutory goals of preventing honey raiding and the spreading of bee diseases." *Id.* at 665.

*Elec. Co., Inc.,* 569 F.Supp. 990, 997 (D.D.C. 1983). "In approving the consent decree as in the public interest, and in directing the Operating Companies to provide intra-LATA access, it was not the court's intention to require the decimation of the local telephone networks or to deprive customers of the conveniences and cost benefits which the Operating Companies have succeeded in making available to them." *United States v. Western Elec. Co., Inc.,* 569 F.Supp. 1057, 1108 (D.D.C.1983). "[T]he interexchange carriers are allowed to carry all toll calls (both inter-LATA and intra-LATA) while the Operating Companies may carry only intra-LATA calls—a significant drawback with respect to convenience." *Id.* at 1108. "[T]he Operating Companies have primary responsibility for exchange services.... The competitors are merely secondary suppliers of intra-LATA service." *Id.* at 1109–1110. In light of differences between companies providing local exchange service and intraLATA long distance toll service and companies providing only long distance toll service, both intra-LATA and interLATA, it is reasonable to classify them differently and to allow the companies providing local exchange service to maintain a slightly more convenient dialing disparity requiring customers desiring to use an interexchange carrier to dial an extra four-digit access code. The classification is a natural one, standing on reasons related to the character of the legislation challenged. We conclude that S.B. 2385 does not violate the special laws provision of Art. IV, § 13, N.D. Const.

Senate Bill 2385 also withstands analysis under a rational basis standard. There was evidence before the Legislature that it would cost a substantial amount of money for the local exchange companies to acquire the sophisticated computer equipment necessary to provide 1+ equal access service to the interexchange carriers for intraLATA toll calls. The federal court recognized that "[i]f the objective of telephone service available at reasonable rates to all is not to be jeopardized, it is ... most important that local rates not be burdened by unnecessary increases." *United States v. Western Elec. Co., Inc.,* 569 F.Supp. 990, 997 (D.D.C.1983). There is a rational relationship between the Legislature's stated goal of continuing "to make available to all people of this state modern and efficient telecommunications services at the most economic and reasonable cost" and its method of doing so in temporarily providing that "the provisioning of dialing parity on an intraLATA basis, otherwise known as 1+ intraLATA equal access, may not be required to be provided by any company providing local exchange service." Treating companies providing local exchange service differently than companies not providing local exchange service bears a rational relationship to a legitimate governmental purpose.

MCI and LDDS argue: "US WEST currently has a virtual monopoly over intra-LATA long distance calls in North Dakota. Its rates for such service are not subject to public utility rate regulation. It can charge whatever it likes for such service." We do not agree. If the interexchange companies "truly offer a better price or a better service ..., they should be able to educate their potential customers that it is worth the extra four numbers to take advantage of their offering." *United States v. Western Elec. Co., Inc.,* 569 F.Supp. 1057, 1110 (D.D.C.1983).

MCI and LDDS argue: "Senate Bill No. 2385 violates the North Dakota Constitution because it grants legislative powers to a private entity by granting local exchange companies the ability to determine the extent, and under what conditions, competition will be allowed in the intraLATA toll market." Except as otherwise provided in the North Dakota Constitution, our Legislature may not delegate legislative powers to others. *E.g., County of Stutsman v. State Historical Society,* 371 N.W.2d 321 (N.D.1985); *Ralston Purina Co. v. Hagemeister,* 188 N.W.2d 405 (N.D.1971); *Wilder v. Murphy,* 56 N.D. 436, 218 N.W. 156 (1928). The distinction between delegable and non-delegable powers is "whether the power granted gives the authority to make a law or whether that power pertains only to the execution of a law which was enacted by the Legislature." *County of Stutsman, supra,* 371 N.W.2d at 327. MCI and LDDS rely on *Montana–Dakota Utilities Co. v. Johanneson,* 153 N.W.2d 414 (N.D.1967), where this court held

that Section 3 of the "Territorial Integrity Law" was an unconstitutional delegation of legislative power. The law in issue provided in part:

"The public service commission ... shall not issue its order or a certificate of public convenience and necessity to any electric public utility to extend its electric distribution lines beyond the corporate limits of a municipality ... unless the electric co-operative corporation with lines or facilities nearest the place where service is required shall consent in writing to such extension ... or unless, ... it shall be shown that the service required cannot be provided by an electric co-operative corporation."

*Id.* at 419.

This court deemed the question of who should be allowed to provide electric service in rural areas to be a legislative question, and because Section 3 "leaves that determination to the electric co-operative, ... this clearly is an unlawful delegation of legislative authority." *Id.* at 421. No such legislative questions are involved here. Senate Bill No. 2385 allows companies providing local exchange service to provide 1+ intraLATA equal access, but temporarily provides that they may not be required to do so. Senate Bill No. 2385 does not give companies providing local exchange service "the authority to make a law," but "pertains only to the execution of a law which was enacted by the Legislature" in dealing with discrimination in the telecommunications industry. *Stutsman, supra,* at 327. " 'The Public Service Commission has only such powers as have been conferred upon it by the Legislature.' " *Cass County Elec. Co-op., Inc. v. Northern States Power Co.,* 518 N.W.2d 216, 219 (N.D.1994), quoting *Grafton v. Otter Tail Power Co.,* 86 N.W.2d 197, 202 (N.D.1957). With S.B. 2385, the Legislature temporarily withdrew from the Public Service Commission the power to require companies providing local exchange service to provide 1+ intraLATA equal access. That change does not constitute a delegation of legislative authority to the companies providing local exchange service.

MCI and LDDS have failed to overcome the presumption of constitutionality accorded to statutes, and the judgment of dismissal is affirmed.

LEVINE, Acting C.J., RALPH J. ERICKSTAD, Surrogate Judge, and JOEL D. MEDD and EVERETT NELS OLSON, District Judges, concur.

JOEL D. MEDD and EVERETT NELS OLSON, District Judges, and RALPH J. ERICKSTAD, Surrogate Judge, sitting in place of VANDE WALLE, C.J., and MESCHKE and SANDSTROM, JJ., disqualified.